In the Matter of Spiro **PAVLOVICH**, Debtor.

**BANK OF LOUISIANA, Appellant,**

v.

Spiro **PAVLOVICH, Appellee.**

No. 91–3017.

United States Court of Appeals, Fifth Circuit.

Jan. 30, 1992.

Sue Buser, Paul J. Mirabile, Ira J. Middleberg, Middleberg, Riddle & Gianna, New Orleans, La., for appellant.

Barry W. Miller, Beychok, Miller & Freeman, Baton Rouge, La., for appellee.

Before CLARK, Chief Judge, JONES, Circuit Judge and PARKER[1], District Judge.*

EDITH H. JONES, Circuit Judge:

■ This appeal arises from the dismissal by the bankruptcy and district courts of an adversary proceeding challenging the discharge and dischargeability of debt owed to the Bank of Louisiana by the debtor. 11 U.S.C. §§ 523, 727(a). The bank

---

1. Chief Judge of the Eastern District of Texas, sitting by designation.

* This opinion was concurred in by Chief Judge Clark prior to his resignation from the court on January 15, 1992.

participated in the debtor's Chapter 11 case and was a major beneficiary of the debtor's Plan. A novel twist is presented because the complaint was not filed until, over two years after confirmation, the debtor stopped making payments on the confirmed Plan, and his case was converted to a Chapter 7 liquidation. We are called upon to decide the circumstances, if any, under which a pre-confirmation Chapter 11 creditor may contest discharge or dischargeability of a debt upon the debtor's subsequent conversion to Chapter 7. We conclude that if a creditor is bound by the Chapter 11 confirmation order, that creditor may not later object to the converted debtor's Chapter 7 discharge or dischargeability of debt owed that creditor on the basis of pre-confirmation acts or the pre-confirmation debt. The creditor may, however, seek to avail itself of these remedies if (a) the creditor's debt arose at or after confirmation and (b) the debtor committed post-confirmation acts that support denial of discharge or render the particular debt non-dischargeable. We reverse and remand the judgment of dismissal.

## BACKGROUND

Pavlovich, a businessman who operated supply vessels for oil wells located offshore of Louisiana, sought Chapter 11 protection in January, 1984. At that time, he had guaranteed debts owed by his related companies to the Bank of Louisiana, and the bank played a significant role in his Chapter 11 proceedings. Among other things, the bank conducted extensive discovery of the debtor's corporate relationships and transfers of property before bankruptcy, the results of which led the court to appoint an examiner at an early stage of the case. With the bank's agreement, however, the debtor proposed and the court confirmed his Second Amended Plan of Reorganization on February 13, 1985 (the "Plan"). Pursuant to the Plan, Pavlovich undertook two obligations to the bank. He agreed to pay the bank $1.6 million of the principal and interest owed on a pre-petition loan to Cargoes Unlimited, which he had endorsed. The bank also lent Pavlovich an additional $500,000 upon confirmation, for which Pavlovich executed a promissory note. Under the Plan, both of these obligations were secured by property in which Pavlovich retained an interest. After confirmation, Pavlovich incurred a third debt to the bank, as he continued to update his guarantee on funds extended by the bank to Atlas Offshore Boat Service, Inc., the last guarantee being executed on a promissory note for more than $750,000 in August, 1987.

Monthly payments on the Plan obligations approximating $36,000 were made from the time of confirmation until November, 1987, when Pavlovich unilaterally ceased making all payments called for by the Plan. This default occurred even though Pavlovich continued to operate his offshore boat companies through 1989.

At the beginning of 1988, the bank sought conversion of the debtor's case to Chapter 7, a motion the bankruptcy court granted in January, 1989, because of the debtor's inability to make plan payments. *See* 11 U.S.C. § 1112(b)(8).[2]

In August, 1989, the bank filed a complaint in the converted Chapter 7 proceeding to deny discharge and to determine the non-dischargeability of its debt.[3] In a lengthy complaint, the bank alleged the following grounds for relief:

1. The debtor's financial statements, which were presented to the bank in connection with his debt each year from 1978 to 1984, differ materially from the schedules filed by the debtor pursuant to his 1984 bankruptcy petition;

2. the debtor is responsible for defalcation while acting in a fiduciary capacity on behalf of his offshore boat service companies;

3. the debtor transferred, removed, and concealed property of the estate;

---

**2.** The bankruptcy court shortly afterward lifted the stay to permit the bank to foreclose on its collateral.

**3.** The complaint was timely filed under Bankruptcy Rules 4004(a) and 4007(c).

4. the report and supplemental report of the Chapter 11 examiner document acts that justify denying discharge;

5. the debtor withheld information from the trustee and the bankruptcy court;

6. the debtor failed to comply with court orders and lawful subpoenas;

7. the debtor failed to satisfactorily explain loss of assets;

8. the debtor caused willful and malicious injury to property of the estate; and

9. the debtor made false oaths or accounts and false claims.

Pavlovich moved to dismiss the bank's complaint.

The bankruptcy court granted the debtor's request, admitting that its analysis "does appear to require adoption of a somewhat harsh and unusual policy." The court reasoned first that the confirmation of Pavlovich's Chapter 11 Plan discharged him from any dischargeable debts arising pre-confirmation. 11 U.S.C. § 1141(d)(1). Further, a confirmed plan of reorganization constitutes *res judicata* of all issues that could have been raised in connection with confirmation of the Plan. *Republic Supply Co. v. Shoaf,* 815 F.2d 1046 (5th Cir. 1987). The bank thus waived its right to file a complaint objecting to discharge or dischargeability by not timely raising these issues before confirmation. 11 U.S.C. § 523(c)(1). Finally, addressing whether the bank's waiver applied to all three debts owed by Pavlovich to the bank as a result of and following confirmation, the court relied on § 348(d) of the Bankruptcy Code.[4] According to the bankruptcy court, § 348(d) provides that in a converted case, a claim against the estate or debtor arising between the original order for relief and the date of conversion is to be treated as a pre-petition claim. Because all pre-petition dischargeable debts were discharged under 11 U.S.C. § 1141(d)(1), the court concluded that all of Pavlovich's confirmation and post-confirmation debts to the bank "related back" to the original date of filing and were therefore discharged by confirmation. Similarly, he concluded, the bank could no longer assert pre-confirmation acts of the debtor as grounds for denial of discharge.

The district court was unwilling to upset the bankruptcy court's considered decision, and he affirmed. The bank has appealed.

## DISCUSSION

With some trepidation, we venture into analysis of the impact of a confirmed plan of reorganization upon a subsequent conversion to Chapter 7. In each such case, much depends on procedural nuances. If, for instance, the debtor's Chapter 11 case had been closed shortly after confirmation of the Plan, 11 U.S.C. § 350, Bankruptcy Rule 3002 and accompanying Advisory Committee Note, the bank might have contended that the automatic stay was inapplicable and that it could file suit against Pavlovich in state court. Alternatively, if the first case had been promptly closed, Pavlovich might have commenced a new Chapter 7 case when he became unable to make payments to the bank, but in such event, he would have been denied a discharge by operation of law. 11 U.S.C. § 727(a)(8). *See generally 5 Collier on Bankruptcy* ¶ 1142.01 (15th Ed., L. King Editor) (1991) (discussing uncertainty as to how long bankruptcy courts should retain jurisdiction over confirmed plans).

Yet another procedural posture presents itself when the debtor, having originally filed in Chapter 11, has failed to confirm a Plan and the case has been converted to Chapter 7 for purposes of liquidation. In such cases, the courts have held that the bankruptcy law and rules provide a second opportunity for creditors whose debts arose before the Chapter 11 case to object to the dischargeability of their debts or to the debtor's discharge. *See, e.g., F & M*

---

4. 11 U.S.C. § 348. EFFECT OF CONVERSION

. . . . .

(d) A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112, 1307, or 1208 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.

*Marquette National Bank v. Richards,* 780 F.2d 24 (8th Cir.1985); *In re Goralnick,* 81 B.R. 570 (9th Cir. BAP 1987); *In re Cail,* 41 B.R. 795 (Bank.N.D.Ill.1984). We agree with the bankruptcy court that such cases are to some extent distinguishable from the one before us.

Deprived of the comfort of controlling caselaw, we recur to the Bankruptcy Code itself to consider the interplay between Chapter 11 confirmation and subsequent conversion and, so doing, arrive at a conclusion somewhat different from that of the bankruptcy court.

■ First, by operation of the Code and a specific provision in the confirmed Plan, Pavlovich was discharged from his pre-confirmation debts other than "any debt excepted from discharge under § 523 of [Title 11]." 11 U.S.C. § 1141(d)(1) and (2). Because the bank was a pre-petition creditor, Pavlovich's pre-petition obligations to the bank were discharged by the order of confirmation. The bank's right to assert nondischargeability of pre-petition debts also ceased upon confirmation, because § 523 requires that a creditor affirmatively assert its right to demonstrate non-dischargeability of the kind asserted by the bank here, 11 U.S.C. § 523(c)(1), and Bankruptcy Rule 4007(c) fixes the time limit for filing such complaints. The bank did not file any complaint to avoid dischargeability prior to confirmation of the Plan. But for debts excepted under § 523, confirmation of the Plan bound the debtor and all then-existing creditors who had notice of the case. 11 U.S.C. § 1141(a).[5] As the bankruptcy court held, the *res judicata* impact of plan confirmation on the bank forecloses this late-blooming attempt to assert issues related to its pre-petition debt and Pavlovich's confirmation conduct.

Second, within 180 days after confirmation, the bank did not seek to revoke Pavlovich's confirmation on the basis that it was procured by fraud. Such a motion, if granted, would have revoked the discharge. 11 U.S.C. § 1144.

Third, the bank had the right to seek conversion of the case from Chapter 11 to Chapter 7, as it did, when it became evident that Pavlovich had materially defaulted on his obligations under the confirmed Plan and was unable to effectuate substantial consummation of the Plan. 11 U.S.C. § 1112(b)(7) and (8).

Fourth, Bankruptcy Code § 348 governs the procedure upon conversion of the case. Because conversion of a case constitutes an order for relief under Chapter 7, to which the case was converted, 11 U.S.C. § 348(a), and such an event triggers a first meeting of creditors under 11 U.S.C. § 341(a), new opportunities arose for certain creditors to contest Pavlovich's Chapter 7 discharge or the dischargeability of particular debts. Bankruptcy Rule 1019(2); Advisory Committee Note to Rule 1019(2). We adopt, as far as it goes, the reasoning of the Eighth Circuit in *F & M Marquette National Bank v. Richards,* 780 F.2d 24, 25–26 (8th Cir.1985). The Eighth Circuit noted that § 348(a) provides that "those provisions of the Code which are keyed to the date of entry of the order for relief for their operation are unaffected ... by conversion." *F & M Marquette National Bank v. Richards,* 780 F.2d at 26 (citing *2 Collier on Bankruptcy, supra* ¶ 348.02). The time for filing dischargeability complaints, however, is keyed not to the date of the order for relief but to the first date set for the meeting of creditors. *See* Bankruptcy Rule 4007(c). For purposes of the dischargeability of debts, the conversion becomes the order for relief in the converted proceeding. 11 U.S.C. § 348(b). Thus, all debts that arose before the date of conversion are discharged, "[e]xcept as provided in [11 U.S.C. § 523]." 11 U.S.C. § 727(b). As the Eighth Circuit held, "[i]t necessarily follows from the interplay of these statutory provisions that a conversion from Chapter 11 to Chapter 7 provides creditors with a new sixty day period in which to file their

---

**5.** In *In re Gurwitch,* 794 F.2d 584 (11th Cir. 1986), the court held that a pre-petition withholding tax claim could be asserted even after a Chapter 11 plan had been confirmed. Similar tax claims are, however, non-dischargeable even if no claim for such tax was filed or allowed. 11 U.S.C. § 523(a)(1)(A).

dischargeability complaints 'following the first date set for the meeting of creditors held pursuant to § 341(a)' in the converted Chapter 7 proceeding." *F & M Marquette National Bank v. Richards,* 780 F.2d at 26.

The analysis of the Eighth Circuit is clearly correct in a case in which no Chapter 11 plan was confirmed before conversion to Chapter 7, but it does not consider the overriding effect of a previous order of plan confirmation on conversion. In such cases, as in the one before us, §§ 1141(d)(1) and 1144 statutorily preclude the bank's complaints to the extent that they are based on events and actions pre-dating Pavlovich's confirmation. Pavlovich achieved a discharge under the terms of his confirmed Chapter 11 Plan. The bank was a major player in the plan negotiating process, its claim constituted a separate class, and it could almost surely have blocked confirmation had it chosen to make full use of the incriminating data it now says were uncovered about Pavlovich's pre-confirmation dealings. Moreover, the Plan set the terms of Pavlovich's ongoing obligations to the bank with the bank's full approval. If the bank did not want to continue doing business with Pavlovich pursuant to a plan of reorganization, it could have objected to his discharge and taken its chances outside the bankruptcy court.[6] Finally, the bank forewent its opportunity to seek revocation of discharge pursuant to § 1144 within six months of the date of confirmation. Nothing in the statutory provisions dealing with plan confirmation suggests that, once the process leading to confirmation is complete, post-confirmation events other than a § 1144 revocation order or an appellate court order will mar its *res judicata* impact upon the parties bound by the plan. The

bank was bound by the plan with respect to its resolution of Pavlovich's pre-petition obligations and any discharge or dischargeability issues the bank could have raised before the date of confirmation.

With respect to Pavlovich's obligations to the bank that date from and after confirmation, we view the matter differently. We disagree with the bankruptcy court's conclusion that § 348(d) rendered nugatory the rights of creditors whose claims arose between the dates of confirmation and Chapter 7 conversion to contest the discharge or dischargeability of their claims. It makes no sense to interpret § 348(d) as somehow retroactively bringing post-confirmation claims within the terms of the debtor's plan and then holding them to the *res judicata* discharge effected by the plan. No plan of reorganization specifically contemplates post-confirmation claims, except in the general question of feasibility, and so no provision could have been made by the plan for those claims. Troubling questions are raised by a construction of § 348(d) that would bind post-confirmation creditors by the *res judicata* impact of a plan in which their claims were not considered and in which most of them would not even have participated. The debtor's novel construction of § 348(d) is totally unsupported by caselaw or secondary authority.

Section 348(d) simply does not address the availability of remedies against discharge and dischargeability. If it did, it would conflict with §§ 348(a) and (b), which, taken together, specifically incorporate §§ 727 and 523 in the converted case. *See F & M Marquette Bank, supra.*[7] Section 348(d) governs the relative priorities of pre-petition and post-petition-pre-conversion claims. *2 Collier on Bankruptcy, supra,*

---

**6.** This recitation demonstrates the importance of the bank's role in furthering confirmation. The confirmed plan would, however, equally bind any pre-confirmation creditor whether or not it objected to the plan, 11 U.S.C. § 1141(a), subject to the constraints of the Fifth Amendment's Due Process Clause.

**7.** The debtor asserts that *F & M* and cases following it are reconcilable with his interpretation of § 348(d) because no plan was confirmed

in those cases. We disagree. Section 348(d) suggests no such distinction. Further, if § 348(d) actually made all pre-conversion claims retroactive to the original date of filing the case for the purpose of determining discharge or dischargeability, it would logically follow that holders of such claims forfeited these remedies if they did not file timely complaints to assert them. Since their claims would nearly always arise after the Rule 4007 bar date passed, none of them could do so.

¶ 348.05. Its principal function is to distinguish between Chapter 11 administrative priority claims and non-priority claims, for the former receive a higher distributional priority in the converted Chapter 7 case. *See, e.g., In re Ramaker,* 117 B.R. 959, 23 C.B.C.2d 936 (Bankr.Ia.1990); *In re Tri–L Corp.,* 65 B.R. 774 (Bankr.Utah 1986). Neither the bankruptcy court nor Pavlovich points to any case, nor have we found one, that suggests a broader compass for this provision.

Thus, creditors of the putatively reorganized debtor who find themselves victimized by post-confirmation acts that would justify revocation of the debtor's discharge are not prevented by § 348(d) from asserting such a claim upon conversion to Chapter 7. Further, those who become creditors of the debtor between the dates of confirmation and conversion may contest the dischargeability of the particular debts owed to them. Creditors whose claims arise from and after confirmation are not barred by the event of confirmation from asserting such claims, except to the extent that they arise from pre-confirmation acts.

The foregoing discussion demonstrates that the bankruptcy court properly dismissed the bank's § 523 and § 727 complaint to the extent that it depended upon pre-confirmation events. As a creditor emerging with restructured rights against Pavlovich after confirmation, and which extended new value to Pavlovich after confirmation, however, the bank did have the right to challenge Pavlovich's post-confirmation actions. The bank's allegations do not clearly break down the conduct of which it complains according to a demarcation line drawn at the date of confirmation. Thus, we must remand for further proceedings in which the bank's complaint may be tested against this demarcation.

The judgments of the district and bankruptcy courts are therefore REVERSED, and the case is REMANDED for further proceedings.