**In re BARTON INDUSTRIES, INC., Debtor.**

**AMERICAN BANK AND TRUST COMPANY, an Oklahoma banking corporation, Plaintiff,**

v.

**The UNITED STATES of America ex rel. INTERNAL REVENUE SERVICE and Barton Industries, Inc., Defendants.**

**Bankruptcy No. BK–93–14544–LN. Adv. No. 93–1181–LN.**

United States Bankruptcy Court, W.D. Oklahoma.

Oct. 20, 1993.

---

Michael A. Bickford, Oklahoma City, OK, for plaintiff.

U.S. Atty., W.D. Oklahoma, Oklahoma City, and Martin M. Shoemaker, Dept. of Justice, Washington, DC, for defendant.

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

PAUL B. LINDSEY, Bankruptcy Judge.

### BACKGROUND

This adversary proceeding was brought by American Bank and Trust Company ("ABT"), in order to resolve a dispute between ABT and Internal Revenue Service ("IRS") over the priority of certain liens on the inventory and accounts receivable of Debtor.

On February 22, 1991, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code.[1] In that case, No. BK–91–01268–LN ("Barton–I"), Debtor's Third Amended Joint Plan of Reorganization ("the Plan") was confirmed by this court on January 24, 1992. Thereafter, in January 1993, Debtor apparently defaulted on its required payments to IRS pursuant to the Plan. On May 18, 1993, IRS served its Notice of Levy on ABT, accompanied by a letter relating Debtor's default and the assertion by IRS of its lien on Debtor's accounts receivable and inventory, in reliance upon 26 U.S.C. § 6323. IRS then withdrew its Notice of Levy and ABT filed this adversary proceeding in Barton–I, seeking to determine the lien priority issue. On May

---

**1.** References herein to statutory provisions by section number only will be to provisions of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq., unless the context requires otherwise.

24, 1993, IRS issued to Debtor its Notice of Intent to Levy—Immediate Response Required.

On August 4, 1993, Debtor filed this Chapter 11 bankruptcy proceeding ("Barton–II"). IRS moved to dismiss Barton–II on the ground that Debtor could not be a debtor in two bankruptcy cases at the same time. At a hearing on that motion, it was noted by the court that the only reason Barton–I had not been closed was the pendency in Barton–I of this adversary proceeding. The court, without objection, ordered this adversary proceeding transferred to Barton–II. The court also noted that a final account and final report were on file in Barton–I, to which no objection had been filed or served, and ordered that Barton–I be closed. Finally, the previous action having removed the only ground asserted by IRS for dismissal, the motion to dismiss Barton–II was denied.

### THE MOTIONS FOR SUMMARY JUDGMENT

ABT filed its motion for summary judgment and supporting brief in this adversary proceeding on June 1, 1993. The motion is grounded in the proposition that ABT's security interest in Debtor's accounts receivable and inventory is prior and superior to the lien of IRS under its Class 2.05.02 claim, notwithstanding any default by Debtor under the Plan. This proposition is based upon three assertions: That the Plan, in paragraph 6.05.02, specifically provides for the priority; that the Plan is binding on all creditors of Debtor, including IRS; and that default by Debtor does not render the Plan a nullity or alter the rights or remedies provided for therein as to the various creditors.

In its response and cross-motion, IRS relies upon three propositions. First, it is urged that the provisions of the plan confirmed in the previous bankruptcy are not determinative of priority, for the reason that lien priority issues may only be determined through an adversary proceeding,[2] and that there was no such adversary proceeding in Barton–I, until this proceeding

was instituted. IRS contends that the plan confirmation process is not a proper substitute for an adversary proceeding.

Next, IRS contends that it is not bound, in Barton–II, by the terms of the Barton–I's defaulted plan, that upon default, it had the option of seeking conversion or dismissal of Barton–I under § 1112(b) or resorting to nonbankruptcy law, and that it chose the latter, and issued its Notice of Levy under 26 U.S.C. § 6331.

Finally, IRS asserts that its lien is superior to that of ABT by reason of 26 U.S.C. § 6323.

ABT, in response to the IRS contentions, first asserts that IRS consented to the treatment of its claim in the Barton–I Plan. It then asserts that the IRS argument, that only an adversary proceeding can determine the issue of lien priority, wholly ignores the provisions of § 1141, which makes the provisions of a confirmed plan binding on all creditors. ABT also notes that IRS at no time objected to its treatment or to the method by which it was arrived at during the pendency of Barton–I, before or after confirmation of the Plan.

ABT next reasserts its position that post-confirmation default does not alter the rights or remedies provided under the Plan with regard to creditors' claims and liens, and addresses the authorities cited by IRS in its response and cross-motion.

Finally, IRS replies that an order on an objection to the IRS proof of claim, apparently relied upon by ABT, did not involve the issue of lien priority in any way, and that therefore IRS' consent to the entry of that order did not constitute its consent to the plan's treatment of that issue. IRS also states that it could not have consented to language contained in a modification of the Plan which was filed, and served on IRS by mail, on the day of the confirmation hearing.

### THE BARTON–I PLAN PROVISION

In the First Amended Joint Plan of Reorganization, filed August 15, 1991, the Class

---

**2.** *See* Rule 7001(2), Fed.R.Bankr.P.

2.05.02 of IRS was provided for in paragraph 6.05.02 as follows:

> 6.05.02 The Class 2.05.02 Claim against Barton Industries, to the extent Allowed as a Secured Claim, shall be paid in full with interest at the rate of eight percent (8%) per annum in equal monthly installments calculated in accordance with a 15 year amortization schedule, commencing the first business day of the second month following the month during which the Effective Date occurs and concluding on the 15th anniversary of the Effective Date. To secure such payments, the Department of the Treasury–Internal Revenue Service shall retain its lien against all assets of Barton Industries.

In the Second Amended Joint Plan of Reorganization, filed September 27, 1991, paragraph 6.05.02 was modified by changing the interest rate from eight percent (8%) to ten percent (10%) per annum, and by amending the last sentence of the paragraph to read as follows:

> To secure such payments, the Department of the Treasury–Internal Revenue Service shall retain its lien against all .assets of Barton Industries, *which shall be subordinate to the senior mortgages, security interests, and liens of American National Bank, American Bank and Trust Company of Tulsa, and Oklahoma Industrial Finance Authority.* (Emphasis supplied to indicate new language.) .

Paragraph 6.05.02 was unchanged in the Third Amended Joint Plan of Reorganization, as originally filed November 12, 1991, and remained in that form until January 24, 1992, when it was amended by the Fifth Modification to that Plan, in which the same sentence was again amended, and a new closing sentence was added, so that the last two sentences read as follows:

To secure such payments, the Department of the Treasury–Internal Revenue Service shall retain its lien against all assets of Barton Industries, which shall be subordinate to the senior mortgages, security interests, and liens of American National Bank *("ANB")*, American Bank and Trust Company, Tulsa, Oklahoma, and The Oklahoma Industrial Finance Authority *("OIFA"), and shall remain subordinate to such senior security interests at all times from and after the Confirmation date, as to all assets of the Reorganized Companies, wherever located, and irrespective of where or when the Department of the Treasury–Internal Revenue Service may have filed notice of any of its pre-petition tax lien(s) and irrespective of any actual notice thereof by any of the Debtors, their subsidiaries or any creditor. In furtherance thereof, 26 U.S.C. Section 6323 shall not apply to the Class 2.05.02 claim, provided nothing herein shall limit the application of such section as to post-Effective Date taxes assessed against the Reorganized Companies.* (Emphasis supplied to indicate new language.)

The plan was confirmed on January 24, 1992, with paragraph 6.05.02 in the form contained in the Fifth Modification.

## DISCUSSION

### *Res Judicata.*

 The first inquiry must be into the extent to which the confirmed plan in Barton–I is binding upon creditors, including IRS. As a corollary, the court must determine whether provisions of such a plan, after the order of confirmation is final, may be collaterally attacked by any participant in the confirmation process.

The effect of confirmation of a Chapter 11 plan is set out in § 1141.[3] In *Stoll v.*

---

3. Section 1141 is, in material part, as follows:
(a) ... [T]he provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.
(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation

*Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1935), the Supreme Court determined that matters covered by a plan of reorganization confirmed by a final order of a bankruptcy court are subject to the doctrine of *res judicata,* in the absence of an allegation of fraud in obtaining the confirmation. The case involved the review of a State court judgment respecting a guarantee of corporate bonds notwithstanding the fact that the guarantee was released under the terms of a plan of reorganization under Section 77B of the Bankruptcy Act. The Court assumed, without deciding, that the bankruptcy court did not have jurisdiction to release the guaranty in the first instance, but supported the conclusiveness of the order approving the plan.

Later, in *Republic Supply Co. v. Shoaf,* 815 F.2d 1046 (5th Cir.1987), a very similar question arose under the Bankruptcy Code.[4] As in *Stoll,* the *Shoaf* court assumed without deciding that the bankruptcy court did not have jurisdiction over the question of the guarantor's liability under the guaranty.[5] Relying upon *Stoll,* and after examining each of the elements of *res judicata* and finding them satisfied, the court held that an action to enforce the guaranty released by the confirmed plan of reorganization was barred by the doctrine of *res judicata.*

A leading treatise summarizes these cases by stating: "The point is that only a direct attack is available and collateral attack is unavailable." 5 Collier on Bankruptcy ¶ 1141.01 n. 17a, at 1141–9 (15th ed. Supp.1993).[6]

### Post–Confirmation Default Followed By Conversion To Chapter 7.

In *In re Pavlovich,* 952 F.2d 114 (5th Cir.1992), debtor obtained confirmation of a Chapter 11 plan of reorganization. No appeal was taken from the confirmation of the plan and no request was made, timely or otherwise, under § 1144 to revoke the order of confirmation.[7] More than two years after confirmation, debtor stopped making payments under the confirmed plan, and the case was converted under § 1112 to a case under Chapter 7. After conversion, a creditor who loaned funds to debtor both pre-petition and after confirmation of debtor's Chapter 11 plan, filed a complaint challenging debtor's discharge and the dischargeability of the debts, based upon extensive allegations of conduct occurring at various times before and after

---

of a plan vests all of the property of the estate in the debtor.

(c) ... [E]xcept as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.

(d)(1) Except as otherwise provided in this subsection, in the plan or in the order confirming the plan, the confirmation of a plan—

(A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not—

(i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;

(ii) such claim is allowed under section 502 of this title; or

(iii) the holder of such claim has accepted the plan; and

(B) terminates all rights and interests of equity security holders and general partners provided for by the plan.

. . . . .

4. The principal difference in the two cases was the fact that, in *Stoll,* the issue of jurisdiction over the subject matter was contested and determined in favor of its jurisdiction by the bankruptcy court, whereas in *Shoaf,* no such contest or specific determination occurred. The court in *Shoaf* points out that *res judicata* requires only that the parties had the opportunity to raise the issue.

5. Under two very similar provisions, § 524(e) of the Code, and 11 U.S.C. § 34 under the Act, the discharge of a debt does not affect the liability of any other person for that debt.

6. *See also In re Air Center, Inc.,* 48 B.R. 693, 695 (Bankr.W.D.Okla.1985).

7. The request must be made within 180 days after the entry of the order of confirmation. It must be in the form of an adversary proceeding. Rule 7001(5), Fed.R.Bankr.P. It may be granted only after notice and a hearing and only if the order was procured by fraud. If granted, the revocation of the order of confirmation must also revoke the discharge of the debtor granted under § 1141(d).

the filing of the bankruptcy petition, before and after confirmation of the plan, and before conversion. The creditor had participated in the confirmation process and had been a major beneficiary of the debtor's Chapter 11 plan.

The bankruptcy court dismissed the complaint in its entirety. In doing so, the court held that pre-confirmation debts were discharged upon confirmation by § 1141(d), that the confirmed plan constituted *res judicata* of all issues that could have been raised in connection with confirmation of the Plan (relying on *Shoaf*), and that the creditor had waived its right to file a complaint objecting to discharge or to dischargeability by not timely raising the issues before confirmation. The bankruptcy court also held that, through the operation of § 348(d), debts which arose post-confirmation and pre-conversion "related back" to the petition date, and were likewise discharged by the confirmation order. The district court affirmed the dismissal.[8]

The court of appeals found that the bankruptcy court properly dismissed the complaint to the extent that it depended upon pre-confirmation events. After noting that the creditor was a major player in negotiations leading to confirmation, the court states that the belatedly complained of pre-petition conduct could have been raised by the creditor in the confirmation process or in a complaint challenging debtor's discharge and the dischargeability of the debts then owed to it, and that it could have sought revocation of the order of confirmation within 180 days of its entry. The court further states:

Nothing in the statutory provisions dealing with plan confirmation suggest that, once the process leading to confirmation is complete, post-confirmation events other than a § 1144 revocation order or an appellate court order will mar its *res judicata* impact upon the parties bound by the plan. The [creditor] was bound by the plan with respect to its resolution of Pavlovich's pre-petition obligations and any discharge or dischargeability is-

sues the bank could have raised before the date of confirmation.

*Pavlovich,* 952 F.2d at 118.

The court of appeals, however, reversed with regard to the post-confirmation, pre-conversion debts, stating:

It makes no sense to interpret § 348(d) as somehow retroactively bringing post-confirmation claims within the terms of the debtor's plan and then holding them to the *res judicata* discharge effected by the plan.

*Id.*

### Post–Confirmation Default Followed By Dismissal.

*Pavlovich* deals with post-confirmation conversion of a Chapter 11 case after debtor materially defaults on his plan obligations. Post-confirmation dismissal after material default is dealt with in *Matter of Depew,* 115 B.R. 965 (Bankr.N.D.Ind.1989).

In *Depew,* the bankruptcy court dismissed a Chapter 11 case in which debtor had defaulted on his obligations under a confirmed plan.

The court first noted that a request under § 1144 for revocation of confirmation, and of the discharge effected by confirmation, was required to be made within 180 days,[9] and could be granted only if the order of confirmation was procured by fraud. Neither of these requirements was met.

The court concluded its original opinion with the following:

The post-confirmation dismissal of a Chapter 11 does not affect the finality of the confirmation order or the discharge that goes with it. *See Matter of Bishop,* 74 B.R. 677, 681 (Bankr.M.D.Ga.1987). *See also In re Smith,* 95 B.R. 468 (Bankr.W.D.Ky.1988). Both are effective "without regard to whether the debtor pays according to the plan or not." *In re N.S. Garrott & Sons,* 48 B.R. 13, 16 (Bankr.E.D.Ark.1984). *See also* Robert

---

**8.** *Pavlovich,* 952 F.2d at 116.

**9.** The 180–day period may not be enlarged. Rules 9006(b)(2) and 9024, Fed.R.Bankr.P.

E. Ginsberg, Bankruptcy ph. 11,6541, [sic] at p. 11073 and ph. 11652, at p. 11074. Thus, although this case will be dismissed, dismissal does not revoke debtors' discharge and their obligations to creditors, as set forth in the confirmed plan, remain unaltered.

*Depew*, 115 B.R. at 967–68.

Subsequently, on a creditor's motion to alter or amend the order, the court addressed the assertion that post-confirmation dismissal also vacates or revokes the order of confirmation as a matter of law, pursuant to § 349(b), particularly § 349(b)(1)(C) and (b)(2).[10]

The court, in addressing the issue, applied a fundamental principle of statutory construction, that a statute be interpreted in a way that will give effect to all of its different parts.[11] After discussion, it concluded that § 349(b) should be restricted in its operation to the sections of the Code to which it specifically refers. So construed, the court held that § 349(b) vacates only those orders or judgments which avoided various transfers or interests pursuant to the powers given to a trustee or debtor-in-possession, and it operates only as to property of the estate which was still property of the estate on the date of dismissal.

Under § 1141(b) and (c), confirmation vests property of the estate in the debtor, to be held and dealt with free and clear of the claims and interests of pre-petition creditors. Thus, upon confirmation, there was no longer any property of the estate upon which § 349(b) could operate or to which the creditor's lien could attach. The court therefore held that the post-confirmation dismissal of a Chapter 11 case does not vacate the order of confirmation or the debtor's discharge, under § 349(b) or other-wise, and the creditor's motion to alter or amend was denied.

***The Authorities Relied Upon By the Parties.***

In its initial brief, ABT cites only *Depew, supra,* and *In re Martin,* 150 B.R. 43 (Bankr.S.D.Cal.1993) (in which IRS participated in confirmation process and agreed to certain procedures with regard to non-dischargeable taxes, later sought to collect the taxes outside those procedures, and was enjoined from doing so).

In its initial brief, IRS cites several cases for the proposition, generally, that a creditor's claim may be reduced or eliminated only through the vehicle of an objection to the proof of claim, and not through the confirmation process alone.[12] IRS asserts that these cases "are analogous to the present situation," and that a bankruptcy plan is not a substitute for the formal proceedings required in order to determine lien priority.

The cases cited by IRS involve situations where creditors were not provided adequate, if in fact they were provided any, notice of the effect of the proposed plan upon their claims, and their liens. Certain of the cases specify that confirmation can not bind a creditor unless its claim has been objected to. In fact, it appears clear that the decisions are grounded, quite appropriately, in due process considerations.

In any event, this court fails to perceive the analogy urged by IRS. In this case, the claim of IRS was objected to, and on February 10, 1992, this court entered an order, agreed to by IRS and the objectors, allowing the IRS claim and providing that the IRS claim "shall be allowed as a secured claim and shall be paid pursuant to the Plan of Reorganization."

---

**10.** These provisions are as follows:
(b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—
 (1) reinstates—
 \* \* \* \* \* \*
 (C) any lien voided under section 506(d) of this title;
 (2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title....

**11.** *Commissioner v. Engle,* 464 U.S. 206, 223, 104 S.Ct. 597, 78 L.Ed.2d 420 (1984).

**12.** *In re Howard,* 972 F.2d 639 (5th Cir.1992); *In re Justice Oaks II, Inc.,* 898 F.2d 1544 (11th Cir.1990); *In re White,* 908 F.2d 691 (11th Cir. 1990); *In re Simmons,* 765 F.2d 547 (5th Cir. 1985); *In re Hobdy,* 130 B.R. 318 (9th Cir. BAP 1991).

Next, IRS cites *Paul v. Monts,* 906 F.2d 1468 (10th Cir.1990), and *In re Jordan Manufacturing Company, Inc.,* 138 B.R. 30 (Bankr.C.D.Ill.1992), for the proposition that its Notice of Levy was "an entirely proper collection activity and was not wrongful." IRS asserts that, upon Debtor's default, it could have resorted to § 1112 and sought conversion or dismissal, but that it chose to resort to nonbankruptcy law, its right to levy under 26 U.S.C. § 6331. The cited cases hold that remedies provided for in the Code for enforcement of plan obligations are not exclusive, and permit resort to nonbankruptcy law, to enforce obligations arising out of confirmed plans of reorganization. They do not permit, or even address the possibility of, enforcement of obligations which may have existed prior to plan confirmation, but were altered by the confirmation process.

Finally, IRS cites a number of cases addressing the priority of security interests as to receivables which arose more than forty-five days after the filing of a notice of federal tax lien. The issues addressed by those cases are not before this court at this time. This court is now addressing only the issues raised by the cross-motions for summary judgment filed by the parties.

The remaining briefs filed by the parties add few substantive authorities, and chiefly reiterate previous arguments and refutations of those of the opposing party.

### The Adversary Proceeding Requirement.

Clearly, a proceeding to determine the validity, priority, or extent of a lien or other interest in property, other than a proceeding to avoid a lien on exempt property, is an adversary proceeding. Rule 7001(2), Fed.R.Bankr.P. Just as clearly, it is not appropriate that such issues be resolved by motion, as contested matters under Rule 9014. In this case, no issue was raised, by adversary proceeding or otherwise, with regard to the relative priority of the IRS and ABT liens until long after confirmation of Debtor's Third Amended Joint Plan of Reorganization.

ABT contends that IRS agreed or consented to its treatment under the confirmed plan, and that therefore it can not now be heard to complain. IRS denies that it consented, noting that the modification containing the language relied upon by ABT was filed on the morning of the confirmation hearing, the same day on which the modification was mailed to IRS. IRS also contends that the absence of a previous adversary proceeding, as required by Rule 7001(2), makes the doctrine of *res judicata* inapplicable, since the court has not previously addressed the issue of lien priority directly on the merits. Finally, IRS contends that while it may consent to subordination of its liens, such consent may be given only through compliance with specific procedures, which did not occur here.

### CONCLUSION

Implicit in the IRS briefs and arguments is the contention that material default by a debtor under a confirmed plan of reorganization somehow returns the parties in interest to their pre-confirmation positions, so that everyone may try, by whatever means available, to obtain satisfaction of debtor's pre-confirmation obligations. The authorities cited above should make it clear that, in the absence of due process violations in the confirmation process, such is simply not the case, whether the case remains open, is converted, is dismissed, or remains open after such default.

■ As is discussed above, it has been established that the provisions of a confirmed plan of reorganization, where all creditors have been provided reasonable notice of the effect of the plan upon their claims and liens, and a reasonable opportunity to object and to be heard, are *res judicata* and not subject to collateral attack. This is true even in cases where the bankruptcy court did not have subject matter jurisdiction to deal with matters provided for by the plan.

■ Determination of a dispute regarding the validity, priority or extent of a lien requires an adversary proceeding. ABT argues, however, that where the proposed treatment of a lien and its priority in a plan is fully disclosed and where the holder of the lien is not only aware of such

proposed treatment but actively participates in the confirmation process and consents to the treatment, the filing and completion of an adversary proceeding should be unnecessary, and would be wasteful of both time and money. This court agrees. Where there is no dispute, the dispute resolution procedure of an adversary proceeding need not be employed, and the undisputed treatment of the lien may be incorporated into a plan which, once confirmed and final, will be entitled to res judicata status.

IRS contends that it did not consent to the treatment, and asserts that its contention is supported by the fact that the last modification of paragraph 6.05.02, which contained the language ultimately confirmed, was filed on the day of confirmation and that the modification was mailed to IRS on that day. This contention is wholly without merit. As is noted above, the Second Amended Plan, filed September 27, 1991, made clear that the IRS lien, while it would be retained, would be subordinate to the mortgages, security interests, and liens of ANB, ABT and OIFA. That language was unchanged in the Third Amended Plan, filed November 12, 1991. The final modification, on January 24, 1992, clarifies the fact of subordination, and makes clear that subordination will continue at all times after confirmation and that Section 6323 of the Internal Revenue Code does not apply to the IRS claim.

IRS did not object to confirmation or appear at the confirmation hearing. Counsel for Debtor, however, advised the court at that hearing that Debtor had an agreement with IRS with regard to the modifications. IRS can not claim surprise, and even if it did not have notice of the precise language of the modification, it made no complaint or any effort thereafter to have the confirmation set aside or rescinded, or the language of the Plan modified in any way. Nor did it appeal the order confirming the Plan. Only after Debtor defaulted on its obligations to make payments did IRS develop and assert the contentions now made to this court.

It should be noted that if the court adopted the position of IRS, that the absence of an adversary proceeding vitiated any provision of the confirmed plan regarding the IRS lien, irrespective of IRS' participation in the confirmation proceedings, it would not matter whether Debtor defaulted or was current in its obligation. IRS would have carte blanche to enforce its lien at any time, without regard to the provisions of the plan, Debtor's compliance therewith, or the rights of any other creditor or interest holder thereunder. Such a result would create at least the potential for chaos, at all times during the life of the Plan, and the confirmed plan would possess no element of finality whatever. This should not be, can not be, and is not, the law.

Here, there was no dispute as to the priority of the IRS lien, and its subordination to the liens of other creditors was a result of negotiations over a significant period of time, in search of a consensual plan of reorganization. The filing and completion of an adversary proceeding would have accomplished nothing, as it would not have been contested, and would have simply wasted the resources of the parties.

■ Upon default by Debtor under the confirmed plan, IRS could have sought conversion or dismissal of the case under § 1112 or it could have sought to enforce, in an appropriate forum, Debtor's payment obligations under the confirmed plan. It could not have reasserted, reargued or relitigated positions and priorities held, or alleged to have been held, prior to confirmation of the plan.

Summary judgment under Rule 56, Fed. R.Civ.P., made applicable to this proceeding under Rule 7056, Fed.R.Bankr.P., is appropriate if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Here, ABT has shown that it is clearly entitled to judgment as a matter of law. IRS, on the other hand, has failed completely to show that it is entitled to judg-

ment. Thus, the motion for summary judgment of ABT will be granted, the motion for summary judgment of IRS will be denied, and judgment will be entered in favor of ABT and against IRS, to the effect that the provisions of the Third Amended Joint Plan of Reorganization of Debtor in Barton–I, were *res judicata,* and binding upon IRS in all respects, particularly in respect to the priority of the IRS lien pursuant to its Class 2.05.02 claim, treated in paragraph 6.05.02 thereof.

IT IS SO ORDERED.