**In re VANDY, INC., Debtor.**

**Bankruptcy No. 94–14187SR.**

United States Bankruptcy Court, E.D. Pennsylvania.

Dec. 7, 1995.

Andrew Schwartz, Trustee, Philadelphia, PA.

Robert H. Holber, Media, PA.

## *OPINION*

STEPHEN RASLAVICH, Bankruptcy Judge.

Before the Court is the Motion of Secured Creditor Meridian Bank ("Bank") to Compel the trustee of the Chapter 7 Estate of Vandy, Inc. ("Debtor") to Abandon Certain Property and for Relief from the Automatic Stay ("Motion"). The United States, by the Internal Revenue Service ("IRS"), filed an objection in which it requested the Court to deny the Motion and to make a determination that it has a security interest in the property senior to the Bank's, subject only to the distribution provisions of Bankruptcy Code § 724(b).

After the conclusion of a hearing, held on June 19, 1995,[1] the Court took the matter under advisement and provided the parties with the opportunity of submitting memoranda of law. For the reasons stated herein, the Court finds in favor of the IRS and against the Bank on the issue of lien priority. Accordingly, the Bank's Motion shall be denied.

## BACKGROUND

The instant dispute had its genesis in events which occurred long before the current Chapter 7 case was commenced. At the hearing, the parties agreed that the relevant facts were not in dispute, and that the issues presented could be decided as a matter of law. Since no evidence was introduced into the record at the hearing, the following factual history was developed from the uncontested allegations of fact made by the parties and the exhibits attached to their pleadings.

The Debtor, d/b/a/ Minuteman Press of Springfield, operated a business at 116–118 Baltimore Pike in Springfield, Pennsylvania. In 1985, the Debtor granted Central Penn National Bank ("Central") a security interest in, and lien on, *inter alia*, "[a]ll present and future accounts, contract rights, chattel paper and general intangibles and all goods or documents represented by any account, in which the Debtor has or may hereafter acquire an interest." (Motion at Exhibit "A", pp. 2 and 3). In January and February 1985, Central filed UCC–1 financing statements to perfect its liens. (Motion at Exhibit "A").

The Bank is the successor-in-interest to Central. In September 1989, the Bank filed notices with the Department of State of the Commonwealth of Pennsylvania, and in the Court of Common Pleas of Delaware County to amend and to continue the above liens in its own name. *Id.* The Bank alleges that its liens secure a claim presently in the amount of $16,834.28. (Motion at ¶ 3).

Not long after the Bank succeeded to the interests of Central, the IRS filed federal tax liens against the Debtor. It appears that on July 9, 1991, and on November 18, 1991, the IRS filed federal tax liens in the amounts of $35,745.02 and $5,051.45 respectively. (IRS Response to the Motion at ¶ 3). Although the IRS did not attach any documentation to its pleadings evidencing its liens, their existence has not been disputed.

On or about May 12, 1992, the Debtor commenced its first bankruptcy case ("Prior Bankruptcy") by the filing of a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code, 11

---

1. The Motion was originally scheduled to be heard on March 16, 1995. At the hearing it was represented to the Court that no dispute existed as to the priority of interests between the Bank and the IRS in the property and that a consensual order would be submitted. Despite this, it appears that an agreement on the form of the order could not be reached apparently due to the subsequent "discovery" by the IRS that a federal tax lien had previously been filed against the property which primed the interests of the Bank. The Motion was thereafter rescheduled for a hearing on June 19, 1995.

U.S.C. §§ 101–1330 ("Code"), in the Bankruptcy Court for the Eastern District of Pennsylvania ("Court"). The Prior Bankruptcy was presided over by Bankruptcy Judge Fox. The Debtor remained in the possession of its assets and management of its business as a debtor-in-possession pursuant to Code §§ 1107 and 1108.

During the Prior Bankruptcy, the Court entered two Orders approving stipulations governing the use of cash collateral. At issue in the matter *sub judice* is the second cash collateral stipulation ("Stipulation") which was approved by Order dated December 21, 1992. (Bank Memorandum at Exhibit "B"). Under the terms of the Stipulation, the Debtor acknowledged that the Bank had a "valid and duly perfected first priority security interest in, mortgages and/or liens on, all of the Pre–Petition Collateral". *Id.* at ¶ (K)(2). Although the term "Pre–Petition Collateral" is not defined elsewhere in the Stipulation, ¶ (E) provides that:

> [a]s security for the Pre–Petition Obligations, Debtor granted Bank valid, enforceable, perfected, first Priority liens and security interests in all the Debtor's assets, including but not limited to, all present and future equipment (other than equipment in which a third party has been granted a senior security interest) fixtures and all rights to payment and other accruing to debtor, all present and future accounts, inventory, contract rights, chattel paper and general intangibles, as more fully set forth in the loan documents.

The Stipulation, at ¶ (G), states that "[t]he Collateral is security for all of the existing and future obligations, including but not limited to the Pre–Petition obligations of [the Debtor.]" Further, ¶ (O)(2) provides that the Debtor "grants to the bank replacement liens and security interests in and on all the pre-Petition Collateral and all property of the Debtor coming into existence prior to the petition date, but not subject to a lien or security interest (other than in favor of the Bank) of any kind and nature whatsoever." Finally, ¶ (O)(9) provides that the Debtor's right to "use Cash Collateral pursuant to this Stipulation shall cease and terminate on February 25, 1993, or the date of confirmation of

Debtor's Reorganization Plan, whichever date comes first, (the "Termination Date)...."

Attached to the Bank's Memorandum as Exhibit "C" is a copy of the "Certification of Service" filed by Debtor's counsel stating that notice of the filing of the Stipulation was mailed to "all parties on the attached list on November 17, 1992". The actual service list, however, was not attached to the Exhibit.

The Prior Bankruptcy culminated in the confirmation of the Debtor's First Amended Plan of Reorganization ("Confirmed Plan") by Order dated March 1, 1993. (IRS Memorandum at Exhibit "A"). Under Section I of the Confirmed Plan creditors were broken down into the following classes:

a) Class I: Expenses of Administration, including approved fees and costs of attorneys;

b) Class II: Tax claims of Governmental Units entitled to priority;

c) Class III: Other Priority Creditors;

d) Class IV: Secured Creditors; and

e) Class V: General Unsecured Creditors.

The means provided for satisfying the claims in each class were provided in Section II of the Confirmed Plan. Class II and Class III claims were to be satisfied as follows:

> Class II: Tax claims of Governmental Units to the extent they are entitled to priority under 11 U.S.C. Section 506 shall be deferred and paid in full with interest at seven percent over the maximum period of time allowed under Section 1129(a)(9)(c) of the Bankruptcy Code. Debtor may prepay these debts early without penalty. Payments will commence within 30 days after the Plan becomes effective following the Court's confirmation of the Plan.

\* \* \* \* \* \*

> Class IV: Claims of the secured creditor, Meridian Bank, which currently stands at approximately $35,000.00 will be assumed by the reorganized Debtor. This claim consists of two loans: (1) approximately $13,000, for which the Debtor has, and will, make monthly payments with interest at the contract rate which will ma-

ture on March 5, 1994, and (2) approximately $21,889.00. Debtor will commence payments on this second loan within 30 days after the Plan becomes effective following the Court's confirmation of the plan. This loan will be paid in full in equal monthly payments over a three year period of time with interest to continue at the contract rate.

Prior to the completion of the Confirmed Plan, however, the Prior Bankruptcy was dismissed, apparently due to the Debtor's default under the Plan's terms.

Thereafter, on July 5, 1994, the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code. Andrew Schwartz was appointed to serve as the interim trustee and, since no successor was elected at the Code § 341 first meeting of creditors, he continues to serve in the case as the statutory Chapter 7 trustee ("Trustee"). Code § 702(b). Pursuant to his statutory duties arising under Code § 703, the Trustee proceeded to collect prepetition accounts receivable due the Debtor. As of the hearing, the Trustee had liquidated approximately $23,000.00 of the Debtor's receivables ("Fund"). On February 10, 1995, the Bank filed the instant Motion. After an agreement on the form of a consensual Order granting relief to the Bank could not be reached,[2] the Motion was relisted on the Court's calendar and was heard on June 19, 1995. The Debtor, the Trustee and the IRS each filed responses objecting to the relief requested by the Bank. At the hearing, however, only the Bank and the IRS appeared to present oral arguments. After the conclusion of the hearing the Court took the matter under advisement and provided the Bank and the IRS with the opportunity of submitting memoranda of law.

In its memorandum, the Bank advances two principal arguments in support of its contention that it is entitled to the Fund. First, it asserts that as of the commencement of the Chapter 7 case it held first priority liens on all of the Debtor's property under the Stipulation approved in the Prior Bankruptcy. The Bank argues that even if the IRS did possess a first priority lien on any of the Debtor's property at the time that the

Chapter 11 case was filed, the Stipulation granted the Bank a security interest in all of the Debtor's pre and post petition property that was senior to any lien that the IRS might have had in such property. The Bank further argues that, notwithstanding the dismissal of the Prior Bankruptcy, the liens granted pursuant to the Stipulation continue to be binding on the parties since the Stipulation provides that the liens granted to the Bank are "deemed perfected *with such perfection binding any subsequently appointed trustee, either Chapter 11 or under any Chapter of the Code, and other creditors of Vandy.*" (Bank Memorandum at p. 3 (emphasis in original)).

Alternatively, the Bank argues that the IRS is precluded from asserting in this proceeding that it holds a secured claim since the Confirmed Plan is *res judicata* as to all issues that could have been asserted and litigated prior to confirmation. In this regard, Bank argues that the Confirmed Plan treated the IRS claim as an unsecured priority claim and did not preserve any liens in its favor.

Finally, the Bank contends that since the value of its liens exceeds the amount of the liquidated accounts receivable in the Fund, the receivables are of no value to the other creditors of the estate and that accordingly the property should be abandoned, pursuant to Code § 554(b), and that relief from the stay should be granted in its favor pursuant to Code § 362(d).

The IRS, in turn, takes the position that under § 6323(a) of the Internal Revenue Code ("IRC") its federal tax liens "prime" whatever liens are held by the Bank. 26 U.S.C. § 6323(a). In response to the Bank, the IRS contends that the Stipulation does not have the legal effect advanced because: a) the Stipulation preserves the priority of preexisting liens; b) the Stipulation terminated upon confirmation of the Amended Plan; and c) due to fundamental differences between the effects of dismissal of bankruptcy cases under Code § 349, and conversion of cases under Code § 348, the Stipulation would not be binding on the Trustee or credi-

---

**2.** *See supra,* note 1.

tors in this, a subsequently filed, Chapter 7 case.

The IRS also contends that the principles of *res judicata* would not be applicable to bind it to the Stipulation since it was not a party to that agreement, and because the Bank has failed to prove that it was properly served with notice of the filing of the Stipulation for due process purposes. The IRS also denies that the Confirmed Plan had the effect of divesting its liens. Moreover, the IRS argues that even if the Bank were correct and its liens had been terminated under the Plan, pursuant to Code § 349 the liens would have been reinstated upon dismissal of the Chapter 11 case.

Like the Bank, the IRS contends that the value of its unpaid liens exceeds the amount of the liquidated accounts receivables in the Fund and that, because of this, the receivables are of no value to the other creditors of the estate. However, the IRS stops short of requesting abandonment and for relief from the automatic stay. Instead, the IRS requests only that the Court deny the relief requested by the Bank and determine that it has a security interest in the Fund which is subject only to the distribution provisions of Code § 724(b).

The Court also received a memorandum from the Trustee. In his memorandum, the Trustee does not challenge the existence or amount of either the Bank's or the IRS's liens. Rather, the Trustee requests only that the Court take into consideration Code § 724(b) which he contends would operate to subordinate the liens of the IRS to certain priority claims, e.g. wage claims under Code § 507(a)(3), listed by the Debtor in Schedule "E". The Trustee states, however, that a

bar date has not been set and that additional claims entitled to priority might also exist. Presumably, it is the Trustee's position that in the event that the Court finds for the IRS on the issue of lien priority, then adjudication of abandonment of the Fund under Code § 554(b) should be postponed until after the amount of priority claims subject to the distribution provisions of Code § 724(b) has been determined.[3]

The Court's jurisdiction has not been disputed by the parties. The within matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1), (b)(2)(A), (G), (K), and (O).

## DISCUSSION

■ At the outset, the Court observes that it must address a preliminary issue concerning the procedural form of the instant matter. Although the Motion is captioned a Motion to Compel the Trustee to Abandon Property and for Relief from the Automatic Stay, it is clear that since both the Bank and the IRS claim superior liens in the property, the Court must determine which of these liens has priority before reaching the merits of the Motion.

By definition, proceedings to "determine the validity, priority, or extent of a lien or other interest in property...." are adversary proceedings which are governed by the rules contained in part VII of the Federal Rules of Bankruptcy Procedure ("Fed. R.Bankr.P."). Fed.R.Bankr.P. 7001(2). Pursuant to Fed.R.Bankr.P. 7003, adversary proceedings must be brought by the filing of a complaint in accordance with Rule 3 of the Federal Rules of Civil Procedure ("Fed. R.Civ.P."). Thus, the within matter, having originally been brought as a contested matter

---

**3.** Since the IRS did not combine a request for abandonment of the Fund under Code § 554(b) with its objection, it is not necessary for the Court to reach this issue in this proceeding.

Prospectively, however, the Court observes that Code § 554(b) provides that on request of a party in interest and after notice and a hearing "the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value *and* inconsequential benefit to the estate." *Id.* (emphasis added). In the instant case, while the Trustee has conceded a lack of equity in the Fund, due to the amount of the IRS tax liens, it

would appear that subordination of the IRS's liens to qualified administrative expenses as provided by Code § 724(b) could provide value or benefit to the estate for purposes of a Code § 554(b) abandonment proceeding. *See In re K.C. Machine & Tool Co.*, 816 F.2d 238, 244 (6th Cir.1987). Because the Trustee's Code § 724(b) rights appear to promise a benefit to unsecured creditors, *id.*, abandonment would only be appropriate to the extent that the value of the Fund exceeds the amount of qualified priority claims. On the record before the Court, however, it appears that the amount of such claims has not yet been determined.

by motion pursuant to Fed.R.Bank.P. 9014, is procedurally improper.

The Court notes, however, that the parties have not raised any objections based on this procedural infirmity. In presiding at the hearing the Court observed that the interests of the Bank and the IRS were adequately represented by counsel. Thus, since it appears that no unfair prejudice will result merely from the procedural form of the proceeding, and because the interests of preserving judicial economy will be served hereby, the Court determines that it shall resolve the dispute rather than delay its adjudication. *See In re Command Services Corp.*, 102 B.R. 905 (Bankr.N.D.N.Y.1989); *In re Orfa Corp. of Philadelphia*, 170 B.R. 257, 275 (E.D.Pa.1994); *In re Stern*, 70 B.R. 472, 473 n. 1 (Bankr.E.D.Pa.1987).

█ Proceeding then to the merits, the Bank argues principally that its liens are superior to those of the IRS under the terms of the Stipulation, e.g. ¶¶ 2 and 3, and that by virtue ¶ 4 of the Stipulation, and by operation of law, such liens are binding on the Trustee and the Debtor's other creditors in the subsequently filed Chapter 7 bankruptcy proceeding. The Court disagrees with the Bank's position for several reasons.

First, the Court finds that the Stipulation terminated by operation of law upon confirmation of the Amended Plan. It is well established that the terms of a confirmed plan define the post confirmation rights and obligations of the debtor and its creditors. Code § 1141(a); *e.g. Paul v. Monts*, 906 F.2d 1468, 1476 (10th Cir.1990); *In re BankEast Corp.*, 142 B.R. 12, 14 (Bankr.D.N.H.1992). In essence, upon confirmation, the confirmed plan becomes a binding contract between the debtor and the creditors. *See In re Page*, 118 B.R. 456, 460 (Bankr.N.D.Tex.1990). Thus, whatever lien rights the Bank retained post confirmation would have to be determined by reference to the terms of the Confirmed Plan and/or the Order of confirmation, rather than the Stipulation. Upon review of the Confirmed Plan, however, the Court observes that none of the terms of the Stipulation, and specifically none of the terms creating lien rights, were incorporated into the Plan.

Even if the Court were to conclude that the Stipulation had not terminated upon confirmation, the result here would still be the same because the Stipulation, by its own terms, did not create liens in favor of the Bank that were superior to any other liens in the collateral that might have existed at the time that the Stipulation was approved. In pertinent part, ¶ 2 states:

> The Debtor hereby grants to the Bank replacement liens and security interests in and on all the pre-petition Collateral and all property of the Debtor coming into existence after the Petition date or in existence prior to the petition date, *but not subject to a lien or security interest (other than in favor of the Bank) of any kind and nature whatsoever.*

As the following analysis reveals, the liens of the IRS, although filed after the liens of the Bank, are nonetheless deemed to pre date the Bank's liens in this case by operation of law pursuant to IRC § 6323(a). It is undisputed that the Fund at issue did not exist when the contested liens were created. However, both the Bank's liens, Stipulation at ¶ 2, and the IRS's liens, *see Glass City Bank v. United States*, 326 U.S. 265, 267–69, 66 S.Ct. 108, 109–111, 90 L.Ed. 56 (1945); *IRS v. Subranni*, 994 F.2d 1069, 1071 (3rd Cir.1993), attach to after-acquired property. It is likewise undisputed that the Bank's liens were filed before the IRS's liens and therefore would appear to benefit from chronological priority. However, when a lien under state law competes for priority with a federal tax lien, the state lien is deemed "to be in existence for 'first in time' purposes only when it has been 'perfected' in the sense that 'the identity of the lienor, the property subject to the lien, and the amount of the lien are established.'" *United States v. McDermott*, 507 U.S. 447, 449–55, 113 S.Ct. 1526, 1528–30, 123 L.Ed.2d 128 (1993) (quoting *United States v. New Britain*, 347 U.S. 81, 84, 74 S.Ct. 367, 369, 98 L.Ed. 520 (1954)); *United States v. Equitable Life Assurance Society*, 384 U.S. 323, 327–28, 86 S.Ct. 1561, 1563–64, 16 L.Ed.2d 593 (1966). In this case, the Bank's liens against the subject receivables would not have attached until the Debtor actually acquired rights in that property,

*McDermott,* 507 U.S. at 450–55, 113 S.Ct. at 1529–30, an event which did not occur until sometime after dismissal of the Prior Bankruptcy. Under IRC § 6323(a), however, "the filing of notice renders the federal tax lien extant for 'first in time' priority purposes regardless of whether it has yet attached to identifiable property." *Id.* at 453, 113 S.Ct. at 1530. Thus, the IRS liens were extant for first in time priority purposes before the Stipulation was approved by the Court, and therefore have priority over the Bank's liens. *Id.; In re Brown,* 159 B.R. 728, 730 (Bankr. W.D.Pa.1993); 26 U.S.C. § 6323(a). No provision of the Stipulation alters this result.

Additionally, the Court finds that the Stipulation terminated by its own terms upon confirmation of the Plan. In pertinent part, ¶ 9 of the Stipulation states: "the rights of the Debtor to use Cash Collateral pursuant to this Stipulation shall cease and terminate on February 25, 1993, or the date of confirmation of Debtor's Reorganization Plan, whichever date comes first . . . , unless the bank consents in writing to an extension of the Termination Date. . . ." It has not been alleged that the Bank agreed to any further extension of the Debtor's use of cash collateral beyond the date of confirmation, nor does it appear from a review of the Confirmed Plan itself that any of the terms of the Stipulation were incorporated into its terms.

■ The Bank also argues that notwithstanding the dismissal of the Prior Bankruptcy, the liens granted pursuant to the Stipulation are deemed perfected and binding on any "subsequently appointed trustee, either Chapter 11 or under any Chapter of the Code, and other creditors of Vandy." (Bank Memorandum at p. 3). The cases cited by the Bank in support of the general proposition that "cash collateral stipulations and other agreements entered into and approved in a Chapter 11 case are binding in a subsequent Chapter 7 case", Bank Memorandum, at p. 4, *e.g. In re Buzzworm,* 178 B.R. 503, 508 (Bankr.D.Colo.1994); *In re Bettis,* 97 B.R. 344, 347 (Bankr.W.D.Tex.1989); and *In re Monument Record Corp.,* 71 B.R. 853, 861 (Bankr.M.D.Tenn.1987), are inapposite since each of the cited cases deals only with the binding effect of such agreements on subsequent parties in cases where a plan had not been confirmed. The instant case is distinguishable since the Stipulation was superseded by the Confirmed Plan. As observed by the bankruptcy court in *In re Valley Park Group,* 96 B.R. 16 (Bankr.N.D.N.Y.1989), "[c]onfirmation of the plan marks the beginning of the reorganized debtor's new financial life. New legal relationships are established and old ones are modified or terminated." *Id.* at 24. Thus, upon confirmation, the terms of the confirmed plan, as opposed to any prior agreements entered into by the debtor and or privies, control the rights, duties and obligations of the reorganized debtor and creditors on a going forward basis. *See* Code § 1141(a). As discussed *supra,* the Confirmed Plan makes no provision for incorporating any of the terms of the Stipulation, nor does it expressly preserve any liens that were created by the Stipulation in favor of the Bank.

The Bank's policy arguments, e.g. that "[c]reditors must be able to deal freely with debtors-in-possession, within the confines of the bankruptcy laws, without fear of retribution or reversal at the hands of a later appointed trustee", *Armstrong v. Norwest Bank Minneapolis, N.A.,* 964 F.2d 797, 801 (8th Cir.1992), while not taken lightly, are simply not applicable in the instant case because the agreement sought to be enforced, the Stipulation, has been supplanted by a later agreement, the Confirmed Plan.

■ Alternatively, the Bank argues that the IRS is precluded under principles of *res judicata* from asserting that it has any liens against the Fund since the Confirmed Plan treated the IRS as an unsecured priority claim holder and did not preserve any liens in the IRS's favor. This argument, too, fails.

The terms of the Confirmed Plan do not provide for, or even discuss, the IRS's secured tax claim. Class II, the only class provided for tax claims, states that it is comprised of the "[t]ax claims of Governmental Units *entitled to priority.*" Plan at p. 1. (emphasis added). The IRS claim at issue here is not a priority claim. Rather, it is a secured tax claim. Class IV, the only classification provided for "Secured Creditors", is

comprised solely of the Bank's claim. It is clear then, that while the Plan provides for the treatment of priority tax claims, it does not provide for the secured claims of taxing authorities.[4] The Court is not prepared to conclude that a plan which speaks only in the most general terms about tax claims which are "entitled to priority", without more, would be sufficient to extinguish a federal tax lien. The Court might have been persuaded otherwise had it been shown that the IRS actively participated in the plan confirmation process and had actually consented to receiving unsecured priority treatment under Code § 507 for its secured claim. *See e.g. In re Barton Industries, Inc.,* 159 B.R. 954, 961–62 (Bankr.W.D.Okl.1993) (holding that while ordinarily a determination of lien priority requires an adversary proceeding, where there is no dispute, e.g. where the secured creditor actively participates in the confirmation process and consents to receiving a particular treatment for its lien, the dispute resolution procedure of an adversary proceeding need not be employed); *United States v. Standard State Bank,* 91 B.R. 874, 876 (W.D.Mo.1988) (parties stipulated that under the terms of the confirmed plan the government surrendered tax lien rights for anticipated favorable treatment as an unsecured creditor and the bank retained its lien rights to the property in question), *aff'd,* 905 F.2d 185 (8th Cir. 1990). However, since no proof was presented which would support such a conclusion, the Court finds that the IRS liens were unaffected by the Plan and passed through the Prior Bankruptcy intact. *See e.g. Dewsnup v. Timm,* 502 U.S. 410, 418, 112 S.Ct. 773, 778, 116 L.Ed.2d 903 (1992) (acknowledging the continuing validity under the Bankruptcy Code of the rule, stated in *Long v. Bullard,* 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886), that permits liens to pass through bankruptcy unaffected); *Matter of Tarnow,* 749 F.2d 464, 465 (7th Cir.1984); *Relihan v. Exchange Bank,* 69 B.R. 122, 126–27 (S.D.Ga.1985); *cf. Cen–Pen Corp. v. Hanson,* 58 F.3d 89 (4th Cir.1995) (liens which

are unavoided at the time of confirmation pass through the Chapter 13 estate unaffected).

The Bank nevertheless argues that the doctrine of *res judicata* precludes the IRS from asserting in this proceeding that it has a lien against the Fund. Generally, confirmation is *res judicata,* as to all justiciable issues decided or which could have been decided at the hearing on confirmation. *See Barton Industries,* 159 B.R. at 957–58; *see also In re Bonanno,* 78 B.R. 52, 55 (Bankr. E.D.Pa.1987) (applying same principle in Chapter 13). The doctrine of *res judicata,* or "claim preclusion" as it is now commonly referred to, *Gregory v. Chehi,* 843 F.2d 111, 115–16 (3d Cir.1988), gives dispositive effect to a prior judgment if a particular issue, though not litigated, could have been raised in the earlier proceeding. *Board of Trucking Emp. Pension Fund v. Centra,* 983 F.2d 495, 504 (3rd Cir.1992). Application of *res judicata* requires:

1) a final judgment on the merits in a prior lawsuit involving;

2) the same parties or their privies; and

3) a subsequent lawsuit based on the same cause of action.

*Centra,* 983 F.2d at 504.

Even assuming *arguendo* that the first two criteria could be met here, the third criterion can not be met since the matter presently before the Court constitutes a different cause of action than that finally resolved in the Prior Bankruptcy. In the first instance, since the prior case was dismissed, the current bankruptcy proceeding constitutes a new Chapter 7 case involving an entirely new bankruptcy estate. Since the Fund did not come into existence until after dismissal of the Prior Bankruptcy, and consequently was not a part of the estate administered in that proceeding, the determination of which secured creditor should be entitled to collect its claim against the Fund, the present cause of action, did even exist until after the Chapter 7 case was commenced. Moreover, the cause

---

**4.** The Court observes that the second paragraph of Section II of the plan provides for the treatment of tax claims "to the extent they are entitled to priority under 11 U.S.C. Section 506...." Code § 506, however, deals with determinations

of secured status, and has nothing whatever to do with whether a tax claim of a governmental unit is entitled to priority. Determinations of priority status are made under Code § 507.

of action that was resolved by a final Order in the Prior Bankruptcy was the confirmation of the amended plan of reorganization. The issue of lien priority as between Bank and IRS did not comprise a necessary part of the Order confirming the Plan and was therefore not decided in that proceeding. Thus, the determination of lien priority constitutes a new cause of action that was not involved in the Prior Bankruptcy. Accordingly, the doctrine of *res judicata* is not applicable here to preclude the IRS from asserting its liens against the Fund.

Based on the foregoing, the Court concludes that the IRS's liens against the Fund are superior to the liens held by the Bank. Accordingly, the Bank's Motion will be denied.

An Order consistent with the foregoing Memorandum Opinion shall be entered.

### ORDER

AND NOW, this 7th day of December, 1995, upon consideration of the Motion of Secured Creditor Meridian Bank ("Bank") to Compel the trustee of the Chapter 7 Estate of Vandy, Inc. ("Debtor") to Abandon Certain Property, pursuant to § 554(b) of the United States Bankruptcy Code, 11 U.S.C. §§ 101–1330 ("Code"), and for Relief from the Automatic Stay ("Motion"), pursuant to Code § 362(d), the written objections thereto and the memoranda of law received by the Court, and after a hearing having been held, and for the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that the Motion is **denied.**