**In re Peter C. SHIN, Debtor.**

No. 02–00357.

United States Bankruptcy Court,
District of Columbia.

Feb. 13, 2004.

Christopher Spera, Deckelbaum, Deckelbaum, Ogens & Raftery Chtd., Bethesda, MD, Nelson Deckelbaum, Deckelbaum, Ogens, Reiser & Shedlock Chtd., Bethesda, MD, Stephen W. Nichols, Deckelbaum, Ogens & Fischer Chtd., Bethesda, MD, for Debtor.

## DECISION AND ORDER RE SECOND AMENDED PLAN

S. MARTIN TEEL, JR., Bankruptcy Judge.

At the confirmation hearing on his First Amended Reorganization Plan, the debtor, Dr. Peter C. Shin, filed a second Amended Reorganization Plan (Docket Entry No. 129) ("Second Amended Plan")[1] under chapter 11 of the Bankruptcy Code (11 U.S.C.).[2] The debtor must modify the Second Amended Plan for the reasons that follow, unless the debtor (who has not had an opportunity to address these issues)

---

**1.** The plan is erroneously entitled First Amended Reorganization Plan because it was submitted as a revision of the First Amended Reorganization Plan: it is a copy of the same with changes made by hand, but without the title having been changed.

**2.** Unless otherwise noted, the statutory sections discussed in this decision are sections of the Bankruptcy Code.

files a motion convincing the court that its analysis is in error.

## I

## THE PLAN MAKES NO PROVISION FOR NON–TAX CLAIMS INCURRED POSTPETITION OF A NON–ADMINISTRATIVE CHARACTER, AND MUST LEAVE THOSE CLAIMS UNAFFECTED BY ANY DISCHARGE AND UNAFFECTED BY ANY RELEASE OR INJUNCTION PROVISION IN THE PLAN

■ After filing this case, Dr. Shin likely incurred debts for which he is personally liable based on activities not associated with being a debtor-in-possession (for example, a home heating bill). Claims unrelated to Dr. Shin's being a debtor-in-possession will not be of an administrative character.[3] For ease of discussion, the court will refer to these claims as postpetition non-administrative claims.

■ Dr. Shin's plan contemplates that all claims against Dr. Shin arising prior to confirmation will be discharged, and the plan has release and injunction provisions that apply to such claims. The Bankruptcy Code does not specifically require that postpetition non-administrative claims receive any particular treatment. However, a chapter 11 plan is obviously not proposed in good faith, as required by § 1129(a)(3), if it attempts to rid a debtor of such claims without providing for their payment. As developed below, a plan that fails to provide for payment of postpetition non-administrative claims cannot be confirmed unless the plan expressly excepts such claims from discharge, and from the plan's release and injunction provisions.

## A.

## § 1141(d)(1)(A) PLAINLY IS APPLICABLE TO POSTPETITION ADMINISTRATIVE CLAIMS INCURRED BY THE ESTATE

■ Under 11 U.S.C. § 1129(a)(9)(A), to be confirmed a plan must provide that any administrative expense claim allowed under 11 U.S.C. § 503(b) will be paid in full on the effective date of the plan, unless the holder of the claim agrees to a different treatment. The discharge provisions of § 1141(d)(1)(A), except as provided in § 1141(d)(2) and (3), apply to such an administrative claim.[4] The plan can provide a bar date for filing such a claim.[5] If the

---

**3.** *See In re Mammoth Mart. Inc.,* 536 F.2d 950, 954–55 (1st Cir.1976) (to enjoy administrative claim status, a claim "must arise from a transaction with the debtor-in-possession ... considered apart from any obligation of the debtor"); *In re Pettibone Corp.,* 90 B.R. 918, 934 (Bankr.N.D.Ill.1988). *But see In re Piper Aircraft Corp.,* 169 B.R. 766, 779 (Bankr.S.D.Fla.1994) (claimant must "be a 'creditor' holding a 'claim' in order to treat her and bind her in a plan.").

**4.** *See In re Benjamin Coal Co.,* 978 F.2d 823, 826 (3rd Cir.1992) ("the discharge of all existing claims, including administrative claims, upon confirmation of a Chapter 11 plan is unambiguous ... in the Bankruptcy Code"); *Pettibone Corp.,* 90 B.R. at 934.

**5.** *See* 11 U.S.C. § 503(a) (referring to timely requests for payment of administrative claims, and thus contemplating that a time will be fixed) and § 1123(b)(6) (allowing plan to include any appropriate provision not inconsistent with the Bankruptcy Code). *See also* Collier on Bankruptcy (15th ed. as revised Dec. 2002) ¶ 503.02[2] at 503–8 to 503–9; *Benjamin Coal,* 978 F.2d at 827 ("each claimant's remedies for any future nonpayment of claims acknowledged in the plan are limited to the usual remedies for the type of claim granted by the plan's provisions"); *Behles–Giddens, P.A. v. Raft (In re K.D. Co., Inc.),* 254 B.R. 480, 486–87 (10th Cir. BAP 2000) ("The discharged, pre-confirmation administrative expense claim was replaced upon confirmation with the right to obtain payment as set forth in the Confirmed Plan").

claim is neither timely filed nor allowed to be filed tardily, a discharge under the plan will bar collection of the claim unless it comes within one of the exceptions to § 1141(d)(1)(A).

## B.

## § 1141(d)(1)(A) IS ARGUABLY ALSO APPLICABLE TO POSTPETITION NON–ADMINISTRATIVE DEBTS

In *Sequa Corp. v. Christopher (In re Christopher)*, 28 F.3d 512, 515 (5th Cir. 1994), the court of appeals held that a postpetition claim was discharged under § 1141(d)(1)(A) even though there was some uncertainty (which the court found unnecessary to resolve) regarding whether the claim was an administrative claim (a debt of the estate as opposed to a personal liability of the debtor Christopher).[6] Accordingly, *Christopher* necessarily holds (albeit without much analysis) that a

§ 1141(d)(1)(A) discharge applies to post-petition non-administrative claims.[7]

However, in enacting § 1141(d)(1)(A), Congress gave no indication in the legislative history that it was aware that the statute's plain language would apply not only to prepetition and administrative claims against the estate, but also to those postpetition-preconfirmation claims against the debtor that are non-estate liabilities.[8] Indeed, at first glance, § 1141(d)(1)(A)(i) through (iii)[9] might lead one to think that in order for a claim to be discharged by § 1141(d)(1)(A), the claim must be one that (i) could be asserted via a proof of claim, (ii) could be allowed under § 502 (unless § 502 requires disallowance of the claim), and (iii) gives rise to a right to vote on the plan. Read that way, § 1141(d)(1)(A)(i) through (iii) would make § 1141(d)(1)(A) inapplicable to a postpetition non-administrative claim, for such a claim (i) is not one for which a proof of claim can be filed;[10]

---

6. In *Christopher*, the claimant had been aware of the case, although it had not been mailed the plan and disclosure statement, and the court additionally held this sufficed for § 1141(d)(1)(A) to discharge the claims. *But see Reliable Electric Co. v. Olson Constr. Co.*, 726 F.2d 620 (10th Cir.1984) (discharge of claim without notice of confirmation hearing violates Fifth Amendment); *Pettibone Corp. v. Payne (In re Pettibone Corp.)*, 151 B.R. 166 (Bankr.N.D.Ill.1993) (same). The latter two cases, however, were corporate cases to which § 523(a)(3) has no applicability as § 523 is limited to cases of individual debtors.

7. *See also Bank of Louisiana v. Pavlovich (In re Pavlovich)*, 952 F.2d 114 (5th Cir.1992) (§ 1141(d) applies to all preconfirmation claims, but failing to address whether its holding applied to both administrative claims and non-administrative claims).

8. As noted in *In re Fonda Group, Inc.*, 108 B.R. 962, 966 n. 3 (Bankr.D.N.J.1989):

    The original bills in both the House (H.R. 8200, 95th Cong. 2nd Session) and Senate (S.2266, 95th Cong. 2nd Session) provided and the House and Senate reports refer to "before the date of the order for relief".

The legislative history provides no insight as to the change.

9. Section 1141(d)(1) provides:

    Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—
    (A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not—
       (i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;
       (ii) such claim is allowed under section 502 of this title; or
       (iii) the holder of such claim has accepted the plan.

10. The holder of such a claim cannot file a proof of claim if the holder of the claim is not a creditor. 11 U.S.C. § 501(a). Such a claim does not arise at the time of or before the order for relief, and is not described in 11 U.S.C. § 502(i). *See In re Garfinckels, Inc.*, 203 B.R. 814, 819–20 (Bankr.D.D.C.1996); *Perpetual American Bank v. District of Colum-*

(ii) would not be an allowed claim under § 502 in any event;[11] and (iii) does not give the holder of the claim a right to vote on a plan.[12] However, administrative claims share the same three characteristics: they (i) are not asserted via a proof of claim (but via a § 503(a) request); (ii) are not allowed under § 502 (but under § 503(b)); and (iii) do not give rise to a right to vote on the plan (*see* § 1126(a)). As already noted, § 1141(d)(1)(A) **was** intended to discharge administrative expense claims allowed under 11 U.S.C. § 503(b). It logically follows that § 1141(d)(1)(A)(i) through (iii) do not through implication except either administrative claims or the debtor's postpetition non-administrative debts from the reach of a discharge under § 1141(d)(1)(A).

■ However, administrative claims are different from postpetition non-administrative claims in very important respects: the Bankruptcy Code provides a mechanism for their allowance against the estate, and explicitly requires that a plan provide for full payment of allowed administrative claims. *See* 11 U.S.C. §§ 503(a), 507(a)(1), and 1129(a)(9)(A). As more fully discussed next, this suggests that Congress did not realize that it was providing for a discharge of postpetition non-administrative claims, and that, even if the discharge does apply to such claims, the court should guard against a plan's discharging such claims when a plan leaves them unpaid.

## C.
## PROPRIETY OF MAKING § 1141(d) DISCHARGE INAPPLICABLE TO AN INDIVIDUAL DEBTOR'S POSTPETITION NON–ADMINISTRATIVE DEBTS

The applicability of § 1141(d)(1)(A) to postpetition non-administrative debts is disturbing, as Congress appears to have overlooked such debts in enacting chapter 11, making no provision for their treatment under a plan, and leaving them in a wilderness of neglect:

- Holders of postpetition non-administrative claims (in contrast to administrative claims) cannot insist pursuant to § 1129(a)(9)(A) that the plan must provide for full payment of the claims.
- No other provision of § 1129(a) specifically addresses such claims.
- Because such non-administrative claims cannot acquire allowed status, either under § 502 (prepetition claims) or § 503 (administrative claims), the confirmation requirements of § 1129 that protect a claim based on "the allowed amount of such claim"[13] simply cannot apply to such non-administrative postpetition claims.
- Additionally, because such claims are not allowed claims under § 502, they are not permitted pursuant to § 1126(a) to vote on a plan.

Such postpetition claims of a non-administrative character are arguably not addressed by the so-called best interest of creditors test of § 1129(a)(7) (requiring, "[w]ith respect to each **class** of impaired

---

*bia (In re Carlisle Court, Inc.)*, 36 B.R. 209 (Bankr.D.D.C.1983). Accordingly, the holder of such a claim is not a creditor, 11 U.S.C. § 101(10), and is not entitled to file a proof of claim.

**11.** 11 U.S.C. § 502(b), with exceptions of no relevance, allows a claim in "the amount of

such claim as of the date of the filing of the petition."

**12.** Because such a claim cannot be an allowed claim, it would not be entitled to vote on a plan. *See* 11 U.S.C. § 1126(a).

**13.** *See* §§ 1129(a)(9) and 1129(b)(2)(B)(i).

claims" [emphasis added], that any non-accepting "holder of a claim … of such class … will receive or retain property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 … on such date"). It is doubtful that Congress intended such postpetition non-administrative claims (whose holders cannot vote on a plan), to be placed in a **class** (the predicate to § 1129(a)(7) being applicable) when the purpose of placing claims in a class is that the holders of the claims in that class are generally permitted to vote on the plan.[14]

In any event, even if § 1129(a)(7) can be made to apply to such claims, that does not cure those claims' status of being a disenfranchised group [15] not entitled to vote on a plan. Even if such claims could be placed in a class despite having no right to vote, § 1129(a)(8) [16] could not be satisfied as to them—because the class would never be an accepting class based on the claims' disenfranchised status—unless the claims are left unimpaired (which is the equivalent of declaring them nondischarged).

Of course, it must be acknowledged that notwithstanding a failure to meet the requirements of § 1129(a)(8), a plan may be confirmed if it meets all of the other requirements of § 1129(a) and "if the plan does not discriminate unfairly, and is fair and equitable" with respect to the non-accepting class. 11 U.S.C. § 1129(b). However, with respect to a class of unsecured claims, the "fair and equitable" requirement incorporates an absolute priority rule: the plan is not fair and equitable unless "the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to **the allowed amount of such claim**" (§ 1129(b)(2)(B)(i) (emphasis added)) or "the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property" (§ 1129(b)(2)(B)(ii)). These two parts of § 1129(b)(2)(B) reinforce the absurdity of

---

**14.** Holders of claims that are not impaired have those claims left un-discharged, and are deemed to have accepted the plan. § 1126(f). However, holders of impaired claims (unless they are deemed by § 1126(g) to have rejected the plan because it gives them nothing) are placed in classes so that they can vote to accept or reject their treatment. § 1126(a) and (c). Indeed, § 1129(a)(7)(A)(i) contemplates that the § 1129(a)(7) requirement may be satisfied as to a claimholder if that claimholder "has accepted the plan" (which can be done only by a holder of an **allowed** claim, and postpetition non-administrative claims are never an allowed claim).

**15.** It might be more accurate to use "non-enfranchised" instead of "disenfranchised" if such claims were viewed as never having had the right to vote in the first place. *See* Oxford English Dictionary (1989) giving as an example of the use of the word "disenfranchise" the following: "1893 LYDIA H. DICKINSON

in Barrows Parl. Relig. I. 507 There could…be no legal act disenfranchising woman, since she was never legally enfranchised."

However, "disenfranchised" can be used loosely as meaning not being accorded the right to vote like others. In any event, it is inherent in the Bankruptcy Code that claims ought not be impaired under a chapter 11 plan unless they do have the right to vote, unless the Code expressly authorizes a special treatment (as, for example, under § 1129(a)(9)(C)). So it is accurate to use "disenfranchised" with respect to this inherent right to vote.

**16.** Section 1129(a)(8) provides that the plan cannot be confirmed unless:

(8) With respect to each class of claims or interests—
(A) such class has accepted the plan;
(B) such class is not impaired under the plan.

viewing the provisions of chapter 11 as being applicable to such claims.

First, postpetition non-administrative claims, as was already noted, can never be an allowed claim, so § 1129(b)(2)(B)(i) would be satisfied automatically as to such claims, thereby according them no protection whatsoever!

Second, § 1129(b)(2)(B)(ii) permits cramdown when classes of junior interests and claims will not retain or receive any property under the plan on account of such junior interests or claims. In an individual debtor's chapter 11 case, the only "interest" is the equity interest of the debtor as owner of the property that became property of the estate. *See Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). But the property of the estate is not the debtor's, and accordingly is not property to which the holders of postpetition non-administrative claims can look for payment while the case remains in chapter 11: they can obtain no allowed claim against the property of the estate.[17] So their rights in the property of the estate are nonexistent, and

§ 1129(b)(2)(B)(ii) literally would give them no protection against prepetition claimants or against the debtor's equity interest.[18]

Accordingly, § 1129(b)(2)(B) demonstrates that the claims Congress thought it was dealing with in chapter 11 were those claims that can be allowed against the estate. Postpetition non-administrative claims are not claims against the estate in the chapter 11 case; instead, they are claims against only the debtor individually. The holders of such claims, in contrast to prepetition unsecured claims, are accorded no protection by § 1129(b)(2)(B).

It is thus obvious that postpetition claims of a personal, non-administrative nature, are a neglected category of claims when it comes to treatment under a chapter 11 plan. In addressing treatment of claims under a plan, Congress apparently simply forgot that such a category would arise in an individual's chapter 11 bankruptcy case and failed to specify what treatment a plan must accord them.

■ The absurdities discussed above that arise from treating § 1141(d)(1)(A) as

---

**17.** The court doubts the correctness of decisions holding that "property" under § 1129(b)(2)(B)(ii) includes exempt property that creditors cannot reach and that is not property of the estate. *See In re Gosman,* 282 B.R. 45 (Bankr.S.D.Fla.2002), *criticized in* West's Bankruptcy Law Letter (October 2002) ("To apply the absolute priority rule to an individual debtor's wholly exempt property stands the absolute priority rule on its head—affording to unsecured creditors an artificial 'priority' in exempt property that unsecured creditors simply do not possess." [Citations omitted.] ). However, *Gosman* would not, in any event, alter the court's conclusion that the classes of claims addressed in § 1129(b)(2)(B)(ii) are classes of **allowed claims** permitted to vote on a plan.

**18.** While such claimants could assert their claims against the estate upon a dismissal of the case (*see* 11 U.S.C. § 349(b)(3)) or upon conversion of the case to chapter 7 (*see* 11

U.S.C. § 348(d)), that does not give them a present claim against the property of the estate in the chapter 11 case. Accordingly, in the chapter 11 case, their claims are not senior to the debtor's equity interest in the estate or prepetition unsecured claims against the estate.

Could the holders of postpetition non-administrative claims successfully seek conversion of the case to chapter 7 if the debtor is not paying their claims? The prepetition creditors could urge in opposition that they are entitled to have the first crack at disposition of the property of the estate under a chapter 11 plan, and that the postpetition non-administrative claimants dealt with a debtor whose assets (while the case remained in chapter 11) did not include property of the estate. That issue is not before the court, but it illustrates the problems that arise from Congress not having specified a treatment for postpetition non-administrative claims.

applicable to postpetition non-administrative claims may counsel a holding that such claims are unaffected by a § 1141(d)(1)(A) discharge despite the statute's seemingly plain meaning. *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) ("[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.") [Internal quotation marks and citations omitted.] In any event, because the Bankruptcy Code leaves it to the court to determine what treatment of such claims constitutes good faith and is fair and equitable, the court has discretion, when appropriate, to bar the discharge of such claims as a condition to confirmation of a plan.

If a plan fails to address such claims, holders of the claims who know of the case before confirmation often would not realize that their claims, not even mentioned in the disclosure statement or plan, are in danger of being discharged although they are not addressed by the plan. Congress could not have intended that a bankruptcy court is powerless to prevent those postpetition non-administrative claims from being thus discharged by stealth.

Nondischargeability under 11 U.S.C. § 523(a) is generally not a cure for this ill-addressed problem. Most debts that are incurred by a debtor postpetition and prior to confirmation cannot escape discharge under the § 523(a) exceptions to discharge. Section 523(a)(3) [19] is inapplicable to debts incurred postpetition. *See Christopher,* 28 F.3d 512 at 515.[20] The remaining exceptions to discharge, such as § 523(a)(2), (4), and (6) (for certain fraud, embezzlement or breach of fiduciary duty, or willful and malicious infliction of injury) and § 523(a)(1) (for certain taxes), are inapplicable to many postpetition debts.[21]

However, holders of non-administrative postpetition claims, based on their disenfranchised status, can properly and successfully object to confirmation of a plan (if indeed it will discharge such claims) by contending that the plan makes unsatisfactory provision for their payment and thus effects a result that is not consonant with good faith, *see* 11 U.S.C. § 1129(a)(3), or seek conversion or dismissal under 11 U.S.C. § 1112(b) based on their disenfranchised status. This may be what David G. Epstein, *et al., Bankruptcy* § 10–30 at p. 58 (1992), had in mind in stating:

> Presumably the typical postpetition (but preconfirmation) debt will not be discharged because either the confirmation

19. Under § 523(a)(3), a discharge does not discharge an individual debtor from a debt:

> (3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—
> (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection [debts nondischargeable on special grounds], timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing[.]

20. A holder of a claim that arises postpetition is not a creditor to whom § 523(a)(3) applies.

*See* § 101(10). Nor is such a holder entitled to file a proof of claim. *See* § 501(a).

21. When § 523(a)(2), (4), or (6) does apply, if the debt was incurred more than 60 days after the meeting of creditors, there is an obvious glitch in F.R. Bankr.P. 4007(c) which requires that a complaint to determine the nondischargeability of the debt must be filed within 60 days after the date first set for the meeting of creditors. This serves to illustrate that generally a discharge is thought of as dealing with only prepetition debts (as is true in chapter 7, but not chapter 11), and that postpetition claims of a personal, non-administrative nature are a neglected category in chapter 11 cases.

order or the plan itself will provide otherwise.

Precisely because a proof of claim cannot be filed for such a claim, and because the holder of such a claim has no right to vote on a plan making no provision for payment of the claim, such an impaired claim ought to escape discharge, with the holder of the claim free to pursue collection from the debtor's post-bankruptcy property. The court will thus direct that the debtor's plan will not discharge the debtor's postpetition non-administrative non-tax debts which are not to be paid under the plan.

The court next turns to the debtor's postpetition tax debts which, in contrast, are provided for by the plan both in the case of administrative and non-administrative claims, but in an unsatisfactory manner.

## II

### THE PROVISION FOR POSTPETITION TAX CLAIMS UNDER § 2.3.3(b) OF THE PLAN

Section 2.3.3(b) of the Second Amended Plan provides:

*Postpetition Tax Claims.* All requests for payment of Administrative Claims and other Claims by a governmental unit for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date (***"Postpetition Tax Claims"***) and for which no bar date has otherwise been established prior to the Effective Date, must be Filed on or before the later of (i) thirty (30) days following the Effective Date; and (ii) 120 days following the filing of the tax return for such taxes for such tax year or period with the applicable governmental unit. *Any holder of any Postpetition Tax Claim that is required to File a request for payment of such taxes and does not File such a request by the applicable bar date shall be forever barred from asserting any such Postpetition Tax Claim against the Debtor, the Estate and any property, including the assets of the Debtor and the Estate, whether any such Postpetition Tax Claim is deemed to arise prior to, on, or subsequent to the Effective Date.*

[Underlining, bolding, and italicizing of text in the original.] This provision raises several problems.

### A.

### FAILURE OF § 2.3.3(b) TO PROVIDE FOR PAYMENT OF THE POST-PETITION TAX CLAIMS

Section 2.3.3(b) is the provision dealing with the treatment of postpetition tax claims, but fails to specify when, if ever, such claims are to be paid, and fails to set forth rules for payment in the event of objection. Presumably each such claim is to be paid in full, except in the case of a timely and sustained objection to the claim. *See* 11 U.S.C. § 1129(a)(9)(A) (plan must provide for payment of administrative claims in full on effective date).[22]

---

**22.** To address this problem, and borrowing time periods which appear elsewhere in the plan, § 2.3.3(b) could say:

Unless a request for payment has been objected to by the later of (i) 45 days after the filing of the request for payment or (ii) the Objections Deadline, each timely filed request for payment of a Postpetition Tax Claim shall be paid in full on the Effective Date (or within 45 days after filing of the request if the request is filed later than 45 days prior to the Effective Date). If a party timely objects to the request for payment, then payment of the Claim after it becomes an Allowed Claim shall be controlled by § 4.4.1.

## B.

### § 2.3.3(b)'S BAR AGAINST COLLECTION OF POSTPETITION TAX CLAIMS AND THE DISCHARGES AUTHORIZED BY 11 U.S.C. §§ 505 AND 1141(d)

■ Although perhaps an attempt to mirror 11 U.S.C. § 505(b), § 2.3.3(b) in operation does not comply with § 505(b), and additionally runs afoul of 11 U.S.C. § 1141(d). The court will not allow the plan to operate to discharge any postpetition tax claim or any penalties on such claims, except to the extent that such taxes or penalties are discharged by complying with the procedures of § 505(b).

Sections 505(b) and 1141(d) provide two independent discharges. Under § 505(b):

(b) A trustee may request a determination of any unpaid liability of the estate for any tax incurred during the administration of the case by submitting a tax return for such tax and a request for such a determination to the governmental unit charged with responsibility for collection or determination of such tax. Unless such return is fraudulent, or contains a material misrepresentation, the trustee, the debtor, and any successor to the debtor are discharged from any liability for such tax—

(1) upon payment of the tax shown on such return, if—

(A) such governmental unit does not notify the trustee, within 60 days after such request, that such return has been selected for examination; or

(B) such governmental unit does not complete such an examination and notify the trustee of any tax due, within 180 days after such request or within such additional time as the court, for cause, permits;

(2) upon payment of the tax determined by the court, after notice and a hearing, after completion by such governmental unit of such examination; or

(3) upon payment of the tax determined by such governmental unit to be due.

In turn, § 1141(d) provides a general discharge of debts arising before the date of confirmation of a plan, and any debt specified in 11 U.S.C. § 502(i). However, under § 1141(d)(2), "[t]he confirmation of a plan does not discharge an individual debtor from any debt excepted from discharge under section 523 of this title."

Section 2.3.3(b) provides greater relief than that afforded by §§ 505(b) and 1141(d), as is discussed below.

## C.

### § 505(b) MAY NOT BE UTILIZED TO DISCHARGE PERSONAL TAX LIABILITIES OF A NON–ADMINISTRATIVE CHARACTER; MOREOVER, § 2.3.3(b) OF THE PLAN DOES NOT COMPLY WITH § 505(b) IN THE CASE OF ADMINISTRATIVE CLAIMS

■ Dr. Shin's personal tax liabilities incurred during the administration of the case, but based on activities not associated with being a debtor-in-possession, will not be of an administrative character. *See Mammoth Mart, Inc.*, 536 F.2d at 954–55; and *Pettibone Corp.*, 90 B.R. at 934. For example, Dr. Shin may have earned income during 2002 from non-estate sources for which he is personally liable. The taxes on such income earned by Dr. Shin is not an expense of the estate (so § 505(b) does not apply). *See United States v. Wood (In re Wood)*, 240 B.R. 609 (C.D.Cal. 1999); *In re Johnson*, 190 B.R. 724

(Bankr.D.Mass.1995).[23]

Dr. Shin is not entitled to utilize § 505(b) with respect to such personal tax liabilities of a non-administrative character. As a debtor-in-possession exercising the powers of a trustee, Dr. Shin could file a request under § 505(b) for determination of any "unpaid liability **of the estate** for any tax incurred during the administration of the case," and thereby obtain a discharge of those liabilities (both for the estate and for Dr. Shin). As to a postpetition tax liability that he incurred personally, not as a debtor-in-possession, § 505(b) does not apply because such a liability is not a liability **of the estate.**

■ Even as to administrative tax claims, § 2.3.3(b) of the plan is inconsistent with § 505(b). In attempting to give Dr. Shin a discharge of liability for taxes incurred by the estate during the administration of the case, § 2.3.3(b) sets up a procedure that is inconsistent with the § 505(b). It thrusts on the tax authority the obligation to file a request for payment of the administrative tax claim within 120 days after the filing of the tax return.

Under § 505(b), a debtor-in-possession may file a tax return for taxes incurred in the administration of the case, accompanied by a request for a determination of the taxing authority, and (except in the case of fraud or a material misrepresentation), obtain a discharge from liability for the tax upon paying the reported tax unless, within time periods specified by § 505(b)(1)(A) and (B) the tax authority notifies the debtor that the return has been selected for audit and then that the taxing authority has determined an additional tax due. Section 2.3.3(b) obviously does not comply with those procedures of § 505(b).[24] Moreover, as is discussed next, the discharge set forth in § 2.3.3(b) cannot be justified as consonant with the discharge provisions of § 1141(d).

### D.

### § 2.3.3(b) CONTRAVENES 11 U.S.C. § 1141(d) WITH RESPECT TO POSTPETITION TAX CLAIMS

Under 11 U.S.C. § 1141(d)(2), Dr. Shin's personal liability for postpetition tax debts and penalties thereon are not subject to discharge; therefore, § 2.3.3(b) of the plan contravenes § 1141(d)(2). The court reaches this conclusion via the following steps.

The court first examines whether § 1141(d)(2) contains any exception to dischargeability under § 1141(d)(1)(A) for postpetition tax claims (whether of an estate or personal character) owed by an individual debtor, and concludes that, at least in the case of income taxes and penalties thereon, they are plainly excepted from discharge. Next, the court concludes that other types of postpetition tax claims and penalties thereon owed by an individual debtor are nondischargeable even if they do not literally fit within any excep-

---

**23.** Section 2.3.3(b) ought not be read as applying to certain taxes of a divisible character relating to prepetition events but for which the reporting period straddles the Petition Date. A bar date was previously set for prepetition claims. Because § 2.3.3(b) applies only to taxes "for which no bar date has otherwise been established prior to the Effective Date," such prepetition taxes are excepted from § 2.3.3(b).

**24.** Section 2.3.3(b):

- effects a discharge even if the tax on the return is not paid;
- does not contemplate a request being made under § 505(b) that would alert the taxing authority to its obligation to comply with the time limits of § 505(b) in addressing any tax not reported on the return; and
- makes no exception for fraud or material misrepresentation.

tion under § 523(a) for nondischargeability. Finally, the court concludes that the debtor's liability for such taxes and penalties ought to escape discharge even if they are additionally an administrative claim.

1. *The Particular Propriety of Treating the § 1141(d) Discharge as Inapplicable to an Individual Debtor's Postpetition Income Tax Debts of a Non–Administrative Character.*

■ Nondischargeability of postpetition income tax claims flows from 11 U.S.C. §§ 507(a)(8)(A), 523(a)(1), and 1141(d)(2). *See Wood,* 240 B.R. at 613 n. 36.[25] Under § 1141(d)(2), "[t]he confirmation of a plan does not discharge an individual debtor from any debt excepted from discharge under section 523 of this title." Section 523 is generally not limited to claims that can be allowed against the estate or for which a proof of claim could be filed. Section § 523(a)(1)(A) makes nondischargeable taxes "of the kind and for the periods specified in section ... 507(a)(8) of this title, **whether or not** a claim for such tax was filed or **allowed**." [Emphasis added.] Section 507(a)(8) accords an eighth priority to:

... allowed unsecured claims of governmental units, only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

(iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) ..., not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case.

Such nondischargeable tax claims include those described in § 507(a)(8)(A)(iii), income tax claims assessable after the commencement of the case.[26] So, if the § 1141(d)(1)(A) discharge indeed does generally apply to personal debts incurred postpetition that are not estate liabilities, Dr. Shin's personal non-estate postpetition income tax liabilities would nevertheless be nondischargeable.

2. *The Particular Propriety of Treating the § 1141(d) Discharge as Inapplicable to Certain of an Individual Debtor's Postpetition Non–Income Tax Debts of a Non-Administrative Character.*

■ The proposition that § 523(a)(1) **literally** excepts postpetition tax claims from discharge does not hold true in the case of certain non-income taxes. Section 523(a)(1)(A) limits its dischargeability exception to taxes or customs duties "of the kind and for the periods specified" in § 507(a)(8). In turn, § 507(a)(8) specifies periods that are clearly prepetition periods for certain kinds of taxes, specifically, property taxes (§ 507(a)(8)(B)), employment taxes (§ 507(a)(8)(D)), excise taxes (§ 507(a)(8)(E)), and customs duties (§ 507(a)(8)(F)). Such taxes, when incurred postpetition, in a literal sense cannot escape discharge on the basis of § 523(a)(1)(A) as they are not for a period specified in § 507(a)(8).

Nevertheless, the court does not believe the statute should be applied so literally. The intent of the temporal limitations in § 523(a)(8), as incorporated by § 523(a)(1),

---

**25.** Penalties, however, unless "in compensation for actual pecuniary loss" within the meaning of 11 U.S.C. § 507(a)(8)(G), are not specified in § 507(a)(8).

**26.** The two exceptions to § 507(a)(8)(A)(iii) are for certain taxes that are denied § 507(a)(8) priority but that are independently nondischargeable under § 523(a)(1)(B) (certain taxes for which the return was unfiled or delinquent) or § 523(a)(1)(C) (taxes for which there was a fraudulent return or a willful attempt to evade or defeat).

is to allow the discharge of certain old, stale tax claims. *See Young v. United States*, 535 U.S. 43, 47, 122 S.Ct. 1036, 152 L.Ed.2d 79 (2002). Congress could not have intended bankruptcy courts to make an individual debtor's postpetition tax debts dischargeable when it provided in § 523(a)(1)(A) that recent prepetition tax debts would not escape discharge. Such claims are not old, stale claims that § 523(a)(1), by looking to the periods specified in § 507(a)(8), intended to make dischargeable. To the contrary, they are even more recent claims than the recent prepetition tax claims that · § 523(a)(1) plainly renders nondischargeable. In the case of a similar drafting error under the Bankruptcy Act's dischargeability provisions, the statute was not applied literally,[27] and the statute ought not be applied literally here either. This is one of those rare instances in which it is appropriate to reject a literal application of the statute because it would produce an absurd result that is demonstrably at odds with the general intent of Congress regarding discharging tax claims. *See Hartford Underwriters*, 530 U.S. at 6, 120 S.Ct. 1942; *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).[28]

■ In any event, because the Bankruptcy Code dos not address a specific required treatment for such postpetition non-administrative tax claims, the Bankruptcy Code leaves it to the court to determine what treatment of such claims constitutes good faith and is fair and equitable. The court has the discretion to require that such claims shall remain unaffected by the discharge as a condition to confirmation of a plan.

### 3. Nondischargeability of Postpetition Penalty Claims.

■ The foregoing analysis holds true as well for penalties on an individual debtor's postpetition tax debts. First, as to such postpetition tax penalties of a non-administrative character, such debts ought to escape discharge for the same reasons, discussed above, that other postpetition debts of a non-administrative character (whether tax-related or not) ought to escape discharge.

Second, if a tax debt incurred postpetition is nondischargeable under § 523(a)(1), then the penalties on the tax debt are nondischargeable as well. Under 11 U.S.C. § 523(a)(7) such tax penalties escape discharge unless the penalty is one—

(A) relating to a tax of a kind not specified in paragraph

(1) of this subsection; or

(B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition.

---

**27.** *See In re Jaylaw Drug, Inc.*, 621 F.2d 524 (2d Cir.1980) (holding, under predecessor provision to § 523(a)(1) under the Bankruptcy Act, that postpetition interest on a nondischargeable tax claim, was not discharged—albeit not literally within the language of the provision—as the provision's "objective was to afford relief against stale tax claims, not to prevent the collection of post-petition interest on a claim rendered nondischargeable"). *Accord, United States v. River Coal Co., Inc.*, 748 F.2d 1103, 1107 (1984) (although postpetition interest "did not accrue 'within three years

preceding bankruptcy,' a condition of nondischargeability under § 17 of the Act," such interest was nevertheless nondischargeable).

**28.** The absurdity is further evidence that § 1141(d)(1)(A), as discussed earlier, may indeed not apply to any postpetition non-administrative claim, tax or otherwise. If the § 1141(d)(1)(A) discharge does not apply to any such claim, that would moot the inquiry into whether any such claim that is a tax fits within a § 523 exception to discharge.

Here the tax penalties on certain postpetition tax debts (for example, income taxes) would relate to taxes that are literally nondischargeable under § 523(a)(1), thus satisfying § 507(a)(7)(A) and, because imposed with respect to postpetition taxes, would not run afoul of § 507(a)(7)(B) to be made dischargeable.

However, as already discussed, certain postpetition tax debts—property taxes, employment taxes, excise taxes, and customs duties—do not literally fit within § 523(a)(1) because they relate to a period that is even more recent than the debtor's recent prepetition past. When such taxes are incurred prepetition, and are incurred recently enough to be made nondischargeable under § 523(a)(1) (in conjunction with its reference to the periods specified in § 507(a)(8)), and when the taxes relate to "a transaction or event that occurred [on or after] three years before the date of the filing of the petition," § 523(a)(7) makes the penalties on such taxes nondischargeable. It makes no sense to believe that Congress intended the bankruptcy courts to accord dischargeable status to penalties on taxes incurred even more recently in the postpetition period. Accordingly, for the reasons discussed as to the postpetition taxes themselves, penalties on such postpetition taxes ought to escape discharge, regardless of whether the taxes literally fit within § 523(a)(1) (as in the case of income taxes).

### 4. The Particular Propriety of Treating the § 1141(d) Discharge as Inapplicable to an Individual Debtor's Postpetition Tax Debts of an Administrative Character.

■ The reasoning regarding § 523(a)(1) in the case of non-administrative postpetition tax debts of an individual debtor applies as well to any postpetition tax liabilities of an administrative character for which an individual debtor can be held personally liable.[29] Accordingly, it is inappropriate for the plan to provide that administrative tax debts for which an individual debtor is personally liable will be discharged if not filed by the bar date.[30] This assumes that there are any such tax liabilities for which he can be personally held liable after confirmation, and that assumption, as a matter of law, may not be at all realistic. *See Bellus v. United States*, 125 F.3d 821, 823–24 (9th Cir.1997) (chapter 7 debtor had no liability for taxes she failed to pay as debtor-in-possession while in chapter 11: debtor was a distinct entity from trustee or debtor-in-posses-

---

**29.** The reasoning applies to both claims for administrative income taxes (a type of tax that fits literally into § 523(a)(1)) as well as administrative claims for other types of taxes. There is no reason to believe that Congress would have intended an individual debtor's chapter 11 discharge to apply to types of postpetition taxes that, unlike income taxes, do not literally fit within § 523(a)(1) because § 507(a)(8) is limited, in the case of such taxes, to recent **prepetition** periods. As was discussed above, in limiting the time periods for according nondischargeable status for certain taxes to recent prepetition periods, Congress intended the discharge to apply only to stale claims. Postpetition administrative taxes are less stale than recent prepetition taxes. Congress therefore could not have intended

for the chapter 11 discharge to apply to an individual debtor's liabilities for administrative tax claims.

**30.** It must be noted that as to claims entitled to administrative priority under § 507(a)(1), the provision for nondischargeability in § 523(a)(1)(A) for taxes "of the kind and for the periods specified in section 507(a)(2) or 507(a)(8)" suggests that administrative claims (because accorded § 507(a)(1) priority) were not intended to be covered by § 523(a)(1). Nevertheless, such claims literally fit within § 507(a)(8) as well as § 507(a)(1), and thus can be accorded nondischargeability under § 523(a)(1).

sion).[31] If a debtor is not liable for the estate's administrative tax claims, then there is simply no debt to be discharged.

Nevertheless, as a debtor-in-possession and hence a fiduciary responsible for paying administrative tax claims, Dr. Shin might have personal liability for having failed to pay an administrative tax claim in some circumstances based on breach of fiduciary duty (as an extreme example, consider fraudulent tax returns). *See, e.g., Dodson v. Huff (In re Smyth)*, 207 F.3d 758 (5th Cir.2000); *In re Gorski*, 766 F.2d 723, 725–26 (2nd Cir.1985); *In re Ngan Gung Rest.*, 254 B.R. 566 (Bankr.S.D.N.Y. 2000). If a liability for a breach of fiduciary duty based on failure to pay a tax debt is not strictly speaking a tax debt, § 523(a)(1) might be inapplicable to the debt. However, in that event, such a debt for breach of fiduciary duty would be of a personal, non-administrative character: the debt would be distinct from the administrative tax debt whose non-payment gave rise to the breach of fiduciary duty. As already noted, the § 1141(d) discharge ought not apply to a postpetition debt of a personal, non-administrative character.

Moreover, § 505(b) allows for a debtor-in-possession to obtain a discharge of administrative tax claims, and specifically bars discharging the debtor pursuant to that provision when the tax return "is fraudulent, or contains a material misrepresentation" thus suggesting that Congress did not intend a debtor to escape liability for breaches of her fiduciary duty based on fraud or material misrepresentation. This reinforces the court's view that a debtor's plan ought not provide that a debtor's personal liability for failing to pay

postpetition tax debts of an administrative character ought to be discharged.

Finally, the court's reasoning regarding nondischargeability of penalties on postpetition non-administrative claims applies equally to penalties on administrative tax claims. If an individual debtor has personal liability for the estate's debts for penalties on administrative tax debts, then for the reasons discussed above regarding the nondischargeability of **administrative tax claims** for which she has personal liability, her personal liability for **penalties on administrative tax claims** ought to be nondischargeable as well.

5. *Post–Petition Taxes and Penalties Thereon Ought to be Excepted From the Plan's Release, Discharge, and Injunction Provisions Despite the Plan's Procedures for Filing Claims for Such Claims.*

■ A plan may establish a procedure that sets a deadline for tax authorities to file requests for payment of postpetition tax claims, both administrative and non-administrative. Such a provision, if couched in reasonable terms, complies with 11 U.S.C. § 1123(b)(6) as an "appropriate provision not inconsistent with the applicable provisions of this title," and is necessary to facilitate administration of the plan, for example, by providing the necessary certainty as to when it is likely safe to make distributions to junior classes. A holder of a postpetition tax claim who neglects timely to file the claim faces the risk that estate assets may walk out the door via payment to other claimants. Such bar dates may also be relevant in determining whether a debtor-in-possession has personal liability for non-payment of administra-

---

**31.** If a chapter 11 bankruptcy case is dismissed, 26 U.S.C. § 1398(b)(1) contemplates that an individual debtor is liable for income taxes on the income earned by the estate, but

§ 1398 contains no provision making an individual debtor liable for income taxes on the estate's income when the case is not dismissed.

tive claims based on the reasonableness of her conduct. *See, e.g., Gorski,* 766 F.2d at 725–26.

However, it would be inappropriate to provide that the procedure can cut off later pursuit of payment of such tax claims from Dr. Shin (if he has personal liability for them) unless they are entitled to be discharged under § 505(b). Given the availability of § 505(b), Dr. Shin has a ready way of obtaining a discharge of his liabilities for administrative tax claims as a fiduciary (although he has no way of obtaining a discharge of his postpetition tax liabilities of a non-administrative character). Except to the extent that Dr. Shin obtains such a § 505(b) discharge, § 2.3.3 of the plan would plainly be inconsistent with § 1141(d)(2) in granting a discharge of postpetition taxes and related penalties that are nondischargeable under § 523(a)(1) or 523(a)(7). When a tax claim is nondischargeable, that status is not lost by the tax claimant's failure to file a proof of claim that would have been paid had the claim been timely filed, whether the case is a chapter 7 liquidation case or a chapter 11 reorganization case. *See Fein v. United States (In re Fein),* 22 F.3d 631, 633 (5th Cir.1994) (chapter 11 case); *Grynberg v. United States (In re Grynberg),* 986 F.2d 367, 371 (10th Cir.1993) (chapter 11 case); *United States v. Gurwitch (In re Gurwitch),* 794 F.2d 584 (11th Cir.1986) (chapter 11 case). Accordingly, the provisions for discharging and releasing Dr. Shin from Postpetition Tax Claims, and enjoining their collection, is improper. Striking

those provisions will mean that Dr. Shin will have an incentive to file accurate returns for postpetition taxes.[32]

## III

## § 2.3.3(b) USES CONFUSING TERMINOLOGY REGARDING POSTPETITION CLAIMS

Section 2.3.3(b) of the plan is confusing in regard to liabilities for periods straddling the petition date or the Effective Date. It defines Postpetition Tax Claims as those tax claims "for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date" and provides for a bar against asserting non-timely-filed claims "whether any such Postpetition Tax Claim is deemed to arise prior to, on, or subsequent to the Effective Date." The confusion will be addressed first with respect to administrative tax liabilities and then personal tax liabilities.

With respect to **administrative tax liabilities,** the plan contemplates that the property of the estate will not vest in the debtor until the Effective Date, so tax liabilities incurred by the estate in the post-confirmation/pre-Effective-Date period would be administrative in nature, including, for example, taxes on income generated by estate assets prior to the Effective Date. For the sake of simplicity, as under § 505(b), the plan should refer to administrative tax liabilities as "liability of the estate for any tax incurred during

---

**32.** The court does not address the propriety of the debtor including a plan provision requiring holders of postpetition tax claims to await the outcome of the request for payment procedure, if that procedure results in reasonably prompt payment of such claims, before enforcing their claims against the debtor. *See In re Mercado,* 124 B.R. 799 (Bankr.C.D.Cal. 1991); *In re DePaolo,* 45 F.3d 373, 375 (10th Cir.1995); *In re Amigoni,* 109 B.R. 341

(Bankr.N.D.Ill.1989); *Wood,* 240 B.R. at 615–17. Arguably a debtor's plan may permissibly control at least the timing of the distribution of what was estate property, as opposed to suspending collection of nondischargeable debts from non-estate property acquired by the debtor postpetition, but in the case of federal taxes there is an issue of the Anti–Injunction Act (26 U.S.C. § 7421(a)).

the administration of the case [ending on the Effective Date]." That is a succinct description that avoids the confusing wording used in the plan.

With respect to **non-administrative postpetition tax liabilities** the plan could simply refer to "any liability of the debtor for any tax of a non-administrative character incurred during the period after the filing of the petition and ending on the Effective Date."

## IV

### §§ 2.3.3(b) AND 4.5 OF THE PLAN HAVE OVERLY BROAD DISCHARGE, RELEASE, AND INJUNCTION PROVISIONS

■ Sections 2.3.3(b) and 4.5 of the plan provide for a discharge of all claims that arose before the Effective Date, and § 4.5 provides for a release of, and an injunction against collection of, such claims, with a punitive damage remedy for breach of the injunction. These provisions are overly broad for various reasons.

First, a discharge under § 505(b) or § 1141(d) applies only to debts that arise prior to confirmation. Even if—contrary to the prior discussion in this decision—postpetition tax claims could be affected by an individual debtor's discharge, it would not extend to such claims arising after confirmation. *See Holywell Corp. v. Smith*, 503 U.S. 47, 58–59, 112 S.Ct. 1021, 117 L.Ed.2d 196 (1992); *Bank of Louisiana v. Pavlovich (In re Pavlovich)*, 952 F.2d 114, 119 (5th Cir.1992) ("Creditors whose claims arise from and after confirmation are not barred by the event of confirmation from asserting such claims, except to the extent that they arise from pre-confirmation acts."); *In re Texaco, Inc.*, 254 B.R. 536, 559 (Bankr.S.D.N.Y. 2000).

Second, various debts owed by an individual debtor are excepted from the § 1141(d) discharge and will not have

been discharged under § 505(b). Section 4.5 must thus limit the applicability of its discharge, release and injunction to any debt that has been discharged under § 505(b) or that is subject to discharge under § 1141(d)(1). For reasons already discussed, Dr. Shin's postpetition non-administrative debts, and his debts for postpetition taxes and penalties ought not be subject to the § 1141(d)(1) discharge, and § 4.5 should expressly provide that § 1141(d)(1) shall not apply to such debts.

■ Third, § 4.5 additionally provides for punitive damages for violation of the injunction. Section 4.5 must delete the provision for punitive damages. Congress has created a discharge injunction under § 524(a)(2) and has not seen fit to include punitive damages as a remedy. Providing for such a remedy is inconsistent with the Bankruptcy Code.

## V

### INTEREST ON PRIORITY CLAIMS

■ Sections 2.4 and 2.5 of the Plan provide for various priority claims, but do not provide for interest after the effective date if payment is delayed beyond that date (by reason of an objection to claim). To comply with 11 U.S.C. § 1129(a)(9)(C), the plan must provide for such interest, but can leave the appropriate rate for later determination by providing that after the Effective Date each such allowed claim shall bear interest at a rate that assures that the holder of the claim receives payment that is of a value, as of the Effective Date, equal to the allowed amount of such claim.

## VI

### ESTATE PROPERTY IN THE EVENT OF A CONVERSION TO CHAPTER 7

■ This court routinely provides in the confirmation order, in most individual's

chapter 11 cases in which the property of the estate vests in the debtor, a provision that it is:

> ORDERED that should this case be converted to a case under Chapter 7 of the Bankruptcy Code, all of the debtor's legal or equitable interests, as of the date of conversion, in property that would have been property of the estate had the property of the estate not vested in the debtor by virtue of confirmation of the plan, shall be property of the estate for purposes of the chapter 7 case, notwithstanding the vesting of the property of the estate in the debtor that otherwise arises upon confirmation of the plan; and, by way of illustration and not limitation, such property shall include all proceeds held by the debtor, on the date of conversion, of property that was property of the estate prior to confirmation of the plan.

This assures that, as in the case of conversion from chapter 13, there will be a chapter 7 estate for a trustee to administer if the case is converted to chapter 7 shortly after confirmation based on non-performance by a debtor of her obligations under the confirmed plan. Nevertheless, the court retains the discretion to consider the alternative of dismissing the case, and allowing claimants to commence an involuntary petition to commence a new case which, upon being granted, would accomplish much the same result and additionally sweep into the estate property acquired by the debtor after the filing of the instant case. *Cf. In re Troutman Enterprises, Inc.,* 253 B.R. 8, 11–12 (6th Cir. BAP 2000) (permitting holders of claims dealt with by confirmed chapter 11 plan of **corporate** debtor in first case to file, after first case was converted to chapter 7—in which debtor could not obtain a discharge, an involuntary petition against the debtor).

## VII

The court does not believe that the changes discussed in this decision would materially adversely impact any party's rights under the plan (other than the debtor's). Accordingly, upon the modifications being made, the court can confirm the plan with those modifications. *See* F.R. Bankr.P. 3019.

## VIII

Pursuant to the foregoing, it is

ORDERED that within 14 days after entry of this order, the debtor shall submit a third amended plan, incorporating the changes already made in the Second Amended Plan, and modifying the plan to address the court's concerns set forth above, together with a proposed order confirming the plan.